COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | | |
|---|---|---|
| SECURITY SERVICE FEDERAL CREDIT UNION, | § | No. 08-19-00154-CV |
| | § | Appeal from the |
| Appellant, | § | 168th District Court |
| v. | § | of El Paso County, Texas |
| MICHELLE RODRIGUEZ, | § | (TC# 2018DCV3979) |
| Appellee. | § | |

## **O P I N I O N**

In this interlocutory appeal, Appellant Security Service Federal Credit Union ("SSFCU") appeals the trial court's denial by operation of law of its Motion to Dismiss Pursuant to the Texas Citizens Participation Act (the "Act"). Appellee Michelle Rodriguez sued SSFCU for wrongful termination based on age discrimination. SSFCU filed a motion to dismiss under the Act, asserting that Rodriguez's claims were based on or related to SSFCU's exercise of free speech as defined under the Act.

Because we find SSFCU failed to show by preponderance of the evidence that Rodriguez's suit is based on, related to, or in response to its exercise of free speech, we affirm the denial of Appellant's Motion to Dismiss.

## **BACKGROUND**

Appellee Michelle Rodriguez is a fifty-four-year-old woman who was terminated from her employment of twenty-three years with Security Service Federal Credit Union after allegedly leaving the door of the cash vault open at her branch location. In her Original Petition, Appellee asserts the alleged vault incident is pretext for the actual reason she was terminated, which she claims to be age discrimination.

The parties include lengthy conflicting factual recitations in their briefs that are not necessary to recount in full here. Suffice to say Rodriguez asserts SSFCU's account of the cash vault incident is false and SSFCU is using the incident as an excuse to fire her and replace her with a younger employee. SSFCU posits Rodriguez's actions of leaving the cash vault unsecured for several hours and failing to be forthright about the situation when confronted by her manager constituted offenses egregious enough to warrant termination for cause. However, the critical issue here is the applicability of the Act to Rodriguez's lawsuit, which necessitates our review of this case. For context, we provide some additional factual background below.

### The Vault Incident

Rodriguez was an assistant branch manager with SSFCU in early 2017. On January 31, 2017, shortly before lunch, a battery failure on the cash recycler (which we refer to generally in this opinion as the "vault" or "cash vault") at the branch where Rodriguez worked caused the door to remain open and not close. At the time, the vault contained $75,000 in cash. According to SSFCU, Rodriguez first attempted to contact a locksmith approximately four hours after she learned of the malfunction, and despite receiving training on the proper vendor to contact, failed to contact that vendor for another hour after contacting the locksmith. SSFCU also accuses Rodriguez of leaving the vault open and unsecured when she went off the premises for lunch that day.

2

When confronted approximately two weeks later about the incident by her branch manager, Jesus Garcia, SSFCU claims Rodriguez denied the occurrence happened and, when pressed, was untruthful about her efforts to get the vault closed again. SSFCU argues Rodriguez's actions involving the vault, and, in particular, her lack of veracity in coming forward about the incident initially or when confronted, violates SSFCU's policies and procedures. SSFCU's brief states after Garcia investigated and discussed the incident with several of his superiors, SSFCU made the decision to terminate Rodriguez on February 17, 2017. Rodriguez later filed for unemployment.

*Procedural History*

## A. Plaintiff's Original Petition

Rodriguez filed her lawsuit on October 24, 2018. Initially, the case was assigned to the 346th Judicial District Court of El Paso County. In her pleading, she claims that she "was informed that she was terminated by Mr. Jesus Garcia for allegedly leaving the vault door open," but "denies violating any company policy and denie[s] any conduct that could have resulted in disciplinary action, including termination." Her petition asserts a claim for employment discrimination based on age.

SSFCU filed its original answer on November 26, 2018. Among its affirmative defenses, SSFCU pleads that Plaintiff was terminated "for lawful and legitimate, non-discriminatory business reasons unrelated to her age or other protected employment status."

## B. SSFCU's Motion to Dismiss

On January 4, 2019, SSFCU filed its first motion to dismiss under the Texas Citizens Participation Act. On January 15, 2019, SSFCU filed an amended motion to dismiss. In its motion, SSFCU argued that Rodriguez's lawsuit was "based on, related to, or in response to SSFCU's

3

exercise of its right of free speech on a matter of public concern," and thus, under the Act, warranted dismissal. Specifically, according to SSFCU, because Rodriguez's suit involved discussions among SSFCU employees regarding the vault incident and Rodriguez's behavior, the Act was implicated. SSFCU's motion also contends Rodriguez is unable to make a prima facie showing of each essential element of her employment discrimination claim, which is required to avoid dismissal under the Act. In its argument on this point, SSFCU's motion argues Rodriguez failed to timely file her lawsuit in the case and failed to exhaust her administrative remedies, which it posits preclude her from being able to maintain a case for discrimination.

## C. Discovery Pursuant to the Act and Case Transfer

In early 2019, both sides moved to conduct written discovery related to SSFCU's motion to dismiss. Ultimately, the trial court only allowed Rodriguez to conduct discovery during the stay period mandated by the Act. The trial court set SSFCU's motion to dismiss for hearing on May 1, 2019.

On March 12, 2019, Rodriguez filed a motion for protective order and motion to quash cross-notices of deposition filed by SSFCU for depositions originally noticed by Rodriguez. At a scheduled hearing on the parties' discovery motions, the trial court met with attorneys for both parties in chambers and apparently disclosed counsel for Rodriguez had previously represented the trial judge's brother in a legal proceeding a few years prior. In light of the trial court's disclosure, at the request of SSFCU, the case was transferred out of the 346th District Court. It was assigned to the 168th District Court on March 13, 2019.

## D. SSFCU's Supplement to its Motion to Dismiss, and Plaintiff's Response

SSFCU supplemented its amended motion to dismiss on April 19, 2019, to include an additional affidavit and deposition transcripts of four witnesses, all SSFCU employees, that had

4

been noticed for deposition by Rodriguez. Approximately an hour before the hearing, Rodriguez filed her Objections to SSFCU's motion to dismiss evidence, objections to what she alleges to be an untimely supplement to SSFCU's motion to dismiss, and her response to SSFCU's motion. SSFCU filed a reply and an objection to Rodriguez's response after the hearing, with the trial court's permission.

## E. SSFCU's Motion Pursuant to the Act Denied by Operation of Law

Based on deadlines imposed by the Act, the trial court had until May 23, 2019, to rule on SSFCU's motion. *See* TEX.CIV.PRAC.&REM.CODE ANN. § 27.008(a). The trial court failed to rule, and SSFCU's motion was therefore denied by operation of law. *Id.* SSFCU timely filed its appeal in this case.

## DISCUSSION

SSFCU presents four issues for review:

1. Whether SSFCU met is burden showing Rodriguez's claim was a legal action based on, related to, or in response to SSFCU's exercise of its right of free speech on a matter of public concern pursuant to the Act;

2. Whether Rodriguez established by clear and specific evidence, a prima facie showing of, each essential element of her employment discrimination claim as required by the Act;

3. Whether SSFCU satisfied its burden of proof on a valid defense to Rodriguez's claim; and

4. Whether the trial court erred by not sustaining SSFCU's objections to Rodriguez's evidence.

### *Dismissal under the Act*

## A. Standard of Review

A trial court's ruling on a motion to dismiss under the Act is reviewed *de novo*, as is the court's determination on the statutory interpretation of the Act. *See Darnell v. Rogers*, 588 S.W.3d 295, 300 (Tex.App.—El Paso 2019, no pet.)(*citing Dallas Morning News, Inc. v. Hall*, 579 S.W.3d

5

370, 377 (Tex. 2019)); *Youngkin v. Hines*, 546 S.W.3d 675, 680 (Tex. 2018). "The court first examines whether the defendant invoked the [Act] by showing, by a preponderance of the evidence, that the plaintiff's claim 'is based on, relates to, or is in response to the [Defendant's] exercise of: (1) the right of free speech; (2) the right to petition; or (3) the right of association.'" *Darnell,* 588 S.W.3d at 300 *(citing* TEX.CIV.PRAC.&REM.CODE ANN. § 27.005(b)). If the movant meets its burden, the court must then look to whether the plaintiff has "establishe[d] by clear and specific evidence a prima facie case for each essential element of the claim in question." TEX.CIV.PRAC.&REM.CODE ANN. § 27.005(c); *see Darnell*, 588 S.W.3d at 300-01. If the non-movant fails to meet its burden under the second step, its claim[s] must be dismissed. TEX.CIV.PRAC.&REM.CODE ANN. § 27.005(b). If the non-movant meets its burden under the second step, the third step still requires dismissal if the movant demonstrates by a preponderance of evidence "each essential element of a valid defense to the nonmovant's claim." TEX.CIV.PRAC.&REM.CODE ANN. § 27.005(d).

In deciding the applicability of the Act and, if necessary, whether the plaintiff has met its burden of producing clear and specific evidence of each essential element of its claim, a court is required to look to the pleadings and all affidavits, both supportive and opposing, which state the facts supporting the liability or defense at issue. TEX.CIV.PRAC.&REM.CODE ANN. § 27.006(a). Further, if available, a court may consider evidence produced by either party in support of its position, although neither party is required to produce evidence beyond its pleadings and affidavits if doing so can satisfy its burden under the statute. *See In re Lipsky*, 460 S.W.3d 579, 590-91 (Tex. 2015); *S&S Emergency Training Solutions, Inc. v. Elliott*, 564 S.W.3d 843, 847 (Tex. 2018).

**B. Does the Act apply to Rodriguez's claim of age discrimination?**

In its first issue, SSFCU asserts that Rodriguez's claim is a legal action based on, related to, or in response to SSFCU's exercise of its right of free speech on a matter of public concern, and thus falls within the purview of the Act. *See* TEX.CIV.PRAC.&REM.CODE ANN. § 27.003(a). Under the Act, a "legal action" can be a lawsuit or a single cause of action, among other things. TEX.CIV.PRAC.&REM.CODE ANN. § 27.001(6); *see Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 892 (Tex. 2018). It is apparent Rodriguez's lawsuit constitutes a "legal action" as defined by the Act. The primary question we must address is whether that legal action is based on, related to, or in response to SSFCU's exercise of their right of free speech.

Whether a claim is based on, related to, or in response to a party's exercise of the right of free speech requires analysis of two components: (1) whether the party makes a communication, and (2) whether such communication is made in connection with a matter of public concern. TEX.CIV.PRAC.&REM.CODE ANN. § 27.001(3).

### 1. Communication

A communication under the Act is "the making or submitting of a statement or document in any form or medium, including oral, visual, written, audiovisual, or electronic." TEX.CIV.PRAC.&REM.CODE ANN. § 27.001(1). Texas law explains that the definition of "communication" under the Act is very broad, encompassing "[a]lmost every imaginable form of communication, in any medium[.]" *Adams*, 547 S.W.3d at 894. It likewise includes "statements" and "conduct." *See Castleman v. Internet Money, Ltd.*, 546 S.W.3d 684, 690 n.4 (Tex. 2018).

SSFCU asserts Rodriguez's pleadings alone show by a preponderance of the evidence her lawsuit is based on, related to, or in response to its exercise of the right of free speech. It is unclear exactly which allegations SSFCU references, but we surmise it is referring to the sentence in Rodriguez's Original Petition that states, "On or about February 17, 2017, Plaintiff was informed

7

that she was terminated by [Bank Manager] Garcia for allegedly leaving the vault door open." She goes on to state that she "denies violating any company policy and denie[s] any conduct that could have resulted in disciplinary action, including termination."

In support of its argument that these allegations are sufficient to meet its burden of proof under the Act, SSFCU directs us to several cases in which at least one of the plaintiff's claims was clearly a speech-based claim. *See Adams*, 547 S.W.3d at 890 (analyzing whether speech was "matter of public concern" where plaintiff raised defamation claim involving plaintiff's business services); *ExxonMobile Pipeline Co. v. Coleman*, 512 S.W.3d 895 (Tex. 2017)(analyzing whether speech was "matter of public concern" where plaintiff raised defamation claim involving defamatory statements in internal business documents); *Camp v. Patterson*, No. 03-16-00733-CV, 2017 WL 3378904 (Tex.App.—Austin Aug. 3, 2017, no pet.)(analyzing "matter of public concern" where plaintiff raised defamation claim involving defamatory statements made in texts and emails sent to plaintiff's vendors); *Lippincott v. Whisenhunt*, 462 S.W.3d 507 (Tex. 2015)(analyzing "matter of public concern" where plaintiff raised defamation claim involving defamatory statements made in email). In each of those cases, the primary question was not whether a non-speech-based claim was covered by the Act, it was whether a speech-based claim was covered by the Act. To answer that question the courts looked at the applicable statutory definitions and were able to conclude that the speech-based claim was indeed captured by the Act's "wide net."

SSFCU cites to *Khalil v. Memorial Hermann Health System*, No. H-17-1954, 2017 WL 5068157, at *5-6 (S.D. Tex. 2017) as an example of the dismissal of a state law employment discrimination claim pursuant to the Act. The Southern District stated that because the Act is to be broadly construed and the statute explicitly excludes certain causes of action, but is silent as to

8

discrimination claims, it was reasonable to conclude that the Act can apply to state-law discrimination claims. *Id.* at \*5. *Khalil*'s companion case in Texas' state court, *Memorial Hermann Health System v. Khalil*, No. 01-16-00512-CV, 2017 WL 3389645, at \*5-6 (Tex.App.— Houston [1st Dist.] Aug. 8, 2017, pet. denied), acknowledges, typically, whether an employee of a privately-owned institution performs her job suitably is not a matter of public concern for First Amendment analysis purposes. *Mem. Hermann Health Sys.,* 2017 WL 3389645, at \*5 (citing *Bates v. Dallas Indep. Sch. Dist.*, 952 S.W.2d 543, 550 (Tex.App.—Dallas 1997, writ denied)). However, because the Act includes issues of health and safety in its definition of "matter of public concern," "statements concerning a healthcare professional's competence" fall under the Act's purview. *Id.*

The facts underlying the *Khalil* cases provide a specific, unique fact pattern in which the Act applies to a claim of age discrimination. In those cases, certain written communications among hospital personnel regarding Dr. Khalil's competence to practice medicine formed the basis of each of her claims, including age discrimination. *See id.* at \*1-3 ("Based on the letter from Memorial Hermann's chief of staff as well as other communications, Khalil sued Memorial Hermann for defamation and other claims."). Importantly, those claims also included speech-based claims of defamation and tortious interference with a contract. *Id.* at \*1.

Here, Rodriguez has not alleged any speech-based claim against SSFCU in her petition. Rather, Rodriguez's petition alleges only a non-speech claim for employment discrimination based on age. Specifically, Rodriguez's petition alleges that SSFCU "informed [Rodriguez] that she was terminated by Mr. Jesus Garcia for allegedly leaving the vault door open," despite allegedly having never previously been disciplined for workplace conduct and denying she "violat[ed] any company policy . . . that could have resulted in disciplinary action, including termination." She claims

9

SSFCU failed to follow a non-discriminatory policy in deciding to terminate her employment, replaced her with a younger employee, and treated her less favorably than employees younger than her. She seeks damages for lost wages in the past and future and lost past and future benefits.

It is not apparent from Rodriguez's pleading that her claim is based on, related to, or in response to SSFCU's communications. Other than general allegations about Rodriguez being "informed" she was terminated, there is no mention in her pleadings regarding any type of conduct by SSFCU that could be inferred as constituting a "communication," even under its broad definition. Because the allegations in Rodriguez's petition do not clearly establish the Act applies, the Court must look elsewhere for proof that the action was brought in relation to SSFCU's exercise of its First Amendment rights.

SSFCU provided affidavits from Denise Staudt and Savannah Mondragon in support of its motion. While we are permitted to look at "supporting and opposing affidavits stating the facts on which the liability or defense is based," TEX.CIV.PRAC.&REM.CODE ANN. § 27.006(a), it is unclear from the SSFCU affidavits' how Rodriguez's claim attempts to chill SSFCU's right to free speech, or how Rodriguez's claim is based on SSFCU's communications. Staudt's affidavit details SSFCU's products and services, Rodriguez's employment timeline with SSFCU, Rodriguez's job duties as Assistant Branch Manager, the events regarding the incident with the vault, and various policies and procedures of SSFCU's that Rodriguez allegedly violated. Staudt's affidavit states Rodriguez's claim is "based on, related to, or in response to communications to and about [Rodriguez], and among SSFCU personnel, regarding the decision to end her employment with SSFCU[,]" but does not identified the purported communications or discuss the substance of SSFCU's alleged protected speech.

Mondragon's affidavit recites her conversation with Jesus Garcia, Rodriguez's branch manager, when he inquired about whether Rodriguez contacted Mondragon about how to fix the vault as Rodriguez allegedly represented to him. Mondragon's affidavit appears to be evidence SSFCU offers in support of its defense of Rodriguez's claims, rather than evidence tending to prove application of the ACT.

Additionally, SSFCU attached deposition transcripts of several SSFCU employees in support of its motion. Jesus Garcia was the branch manager at the SSFCU location where Rodriguez worked. In his deposition, he describes an email he received from one of his subordinates regarding Rodriguez leaving the vault unattended. He also describes conversations he had with other SSFCU employees regarding the incident and how Rodriguez should be disciplined. He further describes his conversation with Rodriguez when he confronted her about the incident. He avers leaving the vault unattended was a risk to SSFCU employees and posed a risk of loss for the cash itself. Garcia was also questioned about Rodriguez's written termination notice, which he prepared.

At the time of the incident with Rodriguez and the vault, Derrick Aguilar was the Vice President of Member Services in El Paso for SSFCU. Aguilar's deposition covers much of the same ground as Garcia, particularly related to the timeline of Rodriguez's actions on the date of the vault incident. Aguilar was also questioned regarding Rodriguez's termination notice, which he did not prepare.

Kerry Comer is the HR business consultant for several SSFCU branches in Southern Colorado and El Paso, Texas. Comer testified she verified the numbers in Rodriguez's call log made the afternoon of the vault incident. Comer stated Rodriguez's behavior ultimately put employees at risk, which formed part of the basis of Rodriguez's termination. Comer testified

11

regarding SSFCU's position statement for the EEOC hearing for Rodriguez's claim, which she prepared.

SSFCU never identifies with any specificity what communications Rodriguez's claim is purportedly based on or related to. Unfortunately, this leaves us in an awkward posture of having to presume which communications SSFCU is basing its dismissal on. Based on the deposition testimony provided by SSFCU, we speculate the "communications" upon which SSFCU is relying on include the verbal discussions and written correspondence among SSFCU employees regarding the vault incident and the termination notice prepared by Garcia that formally notified Rodriguez of her termination. From this vantage point, it is conceivable Rodriguez's claim could be related to or in response to communications about her alleged violation of SSFCU's policies, which Rodriguez claims were applied less favorably to her than to younger employees. Using those "communications," we move to the second prong of our inquiry.

**Matter of Public Concern**

Under the Act, a matter of public concern "includes an issue related to:

(A)    health or safety;

(B)    environmental, economic, or community well-being;

(C)    the government;

(D)    a public official or public figure; or

(E)    a good, product, or service in the marketplace."

TEX.CIV.PRAC.&REM.CODE ANN. § 27.001(7).[1] The communication need not be public in order to be covered by the Act as a matter of public concern; private communications are also covered

---

[1] The Legislature recently amended the Act. See H.B. 2730, 86th Leg., R.S. (Tex. 2019). The Act now defines a "[M]atter of public concern" as "an issue related to: (A) a public official, public figure, or other person who has drawn substantial public attention due to the person's official acts, fame, notoriety, or celebrity; (B) a matter of political,

12

under the plain language of the statute. *ExxonMobil Pipeline Co.*, 512 S.W.3d at 900. Further, the communication(s) at issue need not have "more than a 'tangential relationship' to" the specified matters of public concern. *ExxonMobil Pipeline Co.*, 512 S.W.3d at 900. It is not required under the statute that the communications upon which a legal action is based specifically discuss matters of public concern. *Id.* However, the Act does not cover all communications of any kind and does have limits. *See In re IntelliCentrics, Inc.*, No. 02-18-00280-CV, 2018 WL 5289379, at *4 (Tex.App.—Fort Worth October 25, 2018, no pet.)(mem. op.)(acknowledging that the Act casts a wide net but recognizing that the statute's reach has limits); *Erdner v. Highland Park Emergency Center, LLC*, 580 S.W.3d 269, 276 (Tex.App.—Dallas 2019, pet. filed). When the communication involved does not itself relate to a matter of public concern, the assertion that the communication could *result* in a matter of public concern is beyond the reach of the Act. *See Erdner*, 580 S.W.3d at 276 (*citing Nguyen v. Hoang*, 318 F.Supp.3d 983, 1001 (S.D. Tex. 2018)).

SSFCU alleges Rodriguez's lawsuit is based on, related to, or in response to a communication made in connection with health and safety; environmental, economic, or community well-being; the government; and a good, product, or service in the marketplace. We will examine each of these elements in turn.

### a. Health or Safety

SSFCU asserts the communications at issue are related to health and safety because federal regulations regarding mandatory security programs, which include proper vault security, help protect credit unions from robbery, which the National Credit Union Association associates with the potential for personal injury. SSFCU directs us to a few cases where courts have found a communication made regarding health or safety and is covered under the Act. As we discussed

---

social, or other interest to the community; or (C) a subject of concern to the public." TEX.CIV.PRAC.&REM.CODE ANN. § 27.001(7). Because the amendments were not made retroactive, the older definition applies to this appeal.

previously, in *Memorial Hermann Health System*, 2017 WL 3389645, at *5-6, one of our sister courts in Houston found a physician's job performance, as it related to whether she was competent to fulfill her duties as a doctor administering patient care, was a matter involving health or safety. In its companion case in federal court, *Khalil*, 2017 WL 5068157, at *5-6, the Southern District of Texas found the hospital-defendant met its burden in proving the Act applied to a physician's state-law age discrimination claim in federal court. The Southern District applied the identical analysis used by the First District since both the state law tort claims and the discrimination claim in federal court involved the same communications and subject matter. *Id.*

The Court in *Memorial Hermann* substantively dissects *Lippincott* out of the Texas Supreme Court. *See Memorial Hermann Health System*, 2017 WL 3389645, at *5 (*citing Lippincott v. Whisenhunt*, 462 S.W.3d 507, 508-509 (Tex. 2015)). The facts in *Lippincott* closely mirror *Khalil*, involving communications about Whisenhunt, a certified registered nurse anesthetist, and concerns over his job performance. *See Lippincott*, 462 S.W.3d at 508-09. Specifically, administrators of a surgical group authored several emails to various recipients regarding reports Whisenhunt, among other things, was "endanger[ing] patients for his own financial gain[.]" *Id.* The emails detailed allegations "that Whisenhunt 'failed to provide adequate coverage for pediatric cases,' administered a 'different narcotic than was ordered prior to pre-op or patient consent being completed,' falsified a scrub tech record on multiple occasions, and violated the company's sterile protocol policy." *Id.* at 510. Whisenhunt sued the administrators for defamation, tortious interference with existing and prospective business relations, and conspiracy to interfere in business relations. *Id.* at 509. The Texas Supreme Court determined the emails around which Whisenhunt's claims were based implicated, among others, the "health or safety" prong of the Act definition of "matter of public concern," and reaffirmed its position that

14

"the provision of medical services by a health care professional constitutes a matter of public concern." *Id.* at 510 (*citing Neely v. Wilson*, 418 S.W.3d 52, 70 n.12, & 26 (Tex. 2013) *and* TEX.CIV.PRAC.&REM.CODE ANN. § 27.001(7)).

In the cases cited by SSFCU, the communications around which the respective plaintiffs' claims centered dealt with their provision of healthcare services to patients, which the Texas Supreme Court explicitly considers matters of public concern due to the potential implications of health and safety among the public. *See, e.g., Lippincott*, 462 S.W.3d at 509; *Neely*, 418 S.W.3d at 70 n.12 & 26. Additionally, Texas courts acknowledge communications regarding the welfare of children involve the "health or safety" prong of the public concern inquiry. *See DeAngelis v. Protective Parents Coalition*, 556 S.W.3d 836, 852 (Tex.App.—Fort Worth 2018, no pet.)(*citing Watson v. Hardman*, 497 S.W.3d 601, 607 (Tex.App.—Dallas 2016, no pet.)).

We cannot draw such a conclusion to the facts of the case at hand. The communications at issue involve Rodriguez allegedly leaving the vault unsecured for three to five hours and not being forthcoming with her manager when confronted about the alleged lapse later. The "communications" offered by SSFCU evidence a discussion of SSFCU's policy for securing the cash vault and Rodriguez's alleged failures in this regard. The deposition testimony and affidavits also emphasize SSFCU's policies regarding honesty in communication as an employee and Rodriguez's lack of transparency regarding the incident with the cash vault.

Based on the evidence provided, two employees testified they believed Rodriguez's actions placed other branch employees at risk, and that risk formed the basis of the decision to terminate her. Garcia testified he discussed the potential risk to the other employees with two subordinate employees with whom he discussed the incident during his investigation. In examining the overall tone of the communications, however, SSFCU's concern centers on potential loss of cash from the

15

cash vault and the overall breach of its security protocols, as well as its concerns regarding Rodriguez's veracity, but not on the potential risk posed to its employees. Further, there is nothing in the record to indicate that anyone other than SSFCU's employees knew the cash vault was unsecured, or Rodriguez's actions somehow created a greater probability an enterprising bank robber would enter that particular SSFCU branch that day than if the vault had been properly secured. The critical distinction between *Khalil* and *Lippincott* and the instant case is the communications in those cases questioned a pattern of behavior of individuals whose professions directly affect the health and safety of their patients. Here, even if SSFCU had been robbed while the vault was unsecured, logically it may have subjected SSFCU to a greater financial loss, but we cannot reasonably surmise the sole fact of the unsecured vault alone would have increased the risk of violence to employees or customers. In looking at the evidence in the light most favorable to the non-movant, the standard to which we are held, we do not find the "health or safety" prong of the public concern inquiry satisfied under these facts.

### b. Environmental, Economic, or Community Well-Being

"Community well-being" means those matters "affect[ing] the well-being of the community at large or at least a subset of its residents." *Caliber Oil & Gas, LLC v. Midland Visions 2000*, 591 S.W.3d 226, 240 (Tex.App.—Eastland 2019, no pet.)(*citing Schmidt v. Crawford*, 584 S.W.3d 640, 651 (Tex.App.—Houston [1st Dist.] 2019, no pet.)). Neither environmental nor economic well-being are discussed by SSFCU as pertaining to the facts of this case, we therefore do not include them in our analysis.

SSFCU suggests the security protocols of credit unions as mandated by federal regulations affects community well-being, and the communications at issue discuss those portions of SSFCU's policies Rodriguez allegedly violated on the afternoon of the vault incident. However, the record

16

does not demonstrate any communication regarding how the community, or SSFCU's members, or even the individuals who stepped into the branch while the vault was unsecured were in any way affected by the incident in question. There are no communications regarding a recurrent breach of protocol by Rodriguez that would imply a continued threat to the security of SSFCU, or communications suggesting SSFCU's security policies are not sound. Here, the communication does not relate to a matter of public concern; rather, it is about an employee's alleged failure to abide by her employer's security policies for cash security. As discussed previously, the assertion the communication could *result* in a matter of public concern is beyond the reach of the Act. *See Erdner*, 580 S.W.3d at 276 (*citing Nguyen*, 318 F.Supp.3d at 1001). We find the communications at issue does not pertain to environmental, economic, or community well-being.

### c. The Government

SSFCU asserts it is subject to a number of federal regulations pertaining to, among other things, security on its physical premises. SSFCU explains it is also required to implement a security program that satisfies a five-pronged test, to include the program must protect the physical office from various forms of theft. SSFCU further discusses its own policies for employees handling cash on its premises, which include proper securing or attending to vaults, securing locks and doors, and securing devices when an employee is away from the area for an extended period of time.

> A communication is related to the 'government' when it is about governmental misconduct, *Adams,* 547 S.W.3d at 896; direct conduct by the government, such as purchasing property, *Schimmel v. McGregor*, 438 S.W.3d 847, 859 (Tex.App.—Houston [1st Dist.] 2014, pet. denied); or the operation of the government*, In re Lipsky*, 411 S.W.3d 530, 543 (Tex.App.—Fort Worth 2013, orig. proceeding), *mandamus denied*, 460 S.W.3d 579 (Tex. 2015).

*Caliber Oil & Gas, LLC*, 591 S.W.3d at 241. Although SSFCU is required to abide by federal regulations regarding vault security, Rodriguez's termination notice is not about governmental

17

misconduct, direct conduct by the government, or the operation of government. We are not persuaded the communications referenced by SSFCU interacts with "the government" in such a way as to be considered a matter of public concern.

### d. A Good, Product, or Service in the Marketplace

SSFCU also posits "a matter of public concern" is satisfied by the services it provides to the El Paso community, including various loans, banking accounts, investment accounts, credit accounts, "and other financial instruments and banking services." However, the SSFCU communications surrounding Rodriguez's termination do not mention those services, and only highlight her alleged actions in leaving the cash vault unsecured and her failure to abide by SSFCU's communication and honesty policies. Additionally, the communications do not link Rodriguez's alleged actions leading to her termination to SSFCU's services in the marketplace or otherwise allude to them. "Construing the [Act] to denote that all private business discussions are 'a matter of public concern' if the business offers a good, service, or product in the marketplace or is related to health or safety is a potentially absurd result that was not contemplated by the Legislature." *Forget About It, Inc. v. BioTE Medical, LLC*, 585 S.W.3d 59, 68 (Tex.App.—Dallas 2019, pet. denied)(*quoting Erdner*, 580 S.W.3d at 277); *see also Creative Oil & Gas, LLC v. Lona Hills Ranch, LLC*, 591 S.W.3d 127, 132 (Tex. 2019). We do not find the communications at issue relate to SSFCU's services in the marketplace as contemplated by the Act.

After a careful review of the record, we find the communications made by SSFCU regarding Rodriguez's dismissal are not related to any matter of public concern as defined by the Legislature under the Act. We therefore hold SSFCU has not satisfied its burden of proving by a preponderance of the evidence the claims asserted by Rodriguez are based on, related to, or in response to its exercise of the right of free speech.

Having determined SSFCU did not meet its burden, the burden does not shift to Rodriguez to establish by clear and specific evidence a prima facie case for each essential element of her claims. It is therefore unnecessary to decide SSFCU's second and third issues and renders them moot.

### *Evidentiary Considerations*

In its fourth issue, SSFCU claims the trial court erred by not sustaining SSFCU's objections to Rodriguez's evidence.

Both parties lodged objections to the other side's evidence that was never ruled upon by the trial court. Accordingly, we have no indication whether the trial court considered some, all, or none of the objected-to evidence. Because we are not deciding SSFCU's second issue regarding Rodriguez's prima facie showing of her claim on discrimination, we need not consider the evidence she submitted and whether it should have been admitted or excluded. We therefore decline to address Appellant's fourth issue.

Assuming the trial court overruled all of Rodriguez's lodged evidentiary objections and error was preserved, there was no abuse of discretion in failing to exclude the evidence because, having considered evidence submitted by SSFCU in our analysis, we still find the Act does not apply. *See* TEX.R.APP.P. 61.1; *Interstate Northborough Partnership v. State*, 66 S.W.3d 213, 220 (Tex. 2001).

### CONCLUSION

While we acknowledge the Act's breadth prior to its 2019 amendment, we cannot discount the purpose of the statute, which we do not believe would be achieved by finding its application to the facts of this case. *See* TEX.CIV.PRAC.&REM.CODE ANN. § 27.002. Moreover, the very few employment discrimination cases to which the Act has been applied are distinguishable from the facts of the instant case.

19

We hold SSFCU did not meet its burden in proving by a preponderance of the evidence Rodriguez's lawsuit was based on, related to, or in response to its exercise of the right of free speech. Therefore, we find SSFCU's motion was properly denied.

Having overruled Appellant's first issue, which obviates the need to determine its remaining three issues, we affirm.

April 24, 2020

YVONNE T. RODRIGUEZ, Justice

Before Alley, C.J., Rodriguez, and Palafox, JJ.