FILED

02/07/2024

Clerk of the
Appellate Courts

IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 4, 2023

**MATTHEW ADAM CORENSWET v.
SAMANTHA MARIE CORENSWET (RAIN)**

**Appeal from the Circuit Court for Davidson County
No. 19D-1523          Phillip Robinson, Judge**

_____

**No. M2023-00642-COA-R3-CV**

_____

This is an appeal from two orders entered by the trial court in this post-divorce action. In the first order, the trial court found the mother guilty on three counts of criminal contempt, upon a petition filed by the father, for scheduling and taking the parties' minor child to two doctor's appointments and a walk-in clinic in violation of the parties' permanent parenting plan. The parenting plan granted to the father exclusive decision-making authority over all non-emergency medical decisions for the children. In the second order, the trial court *sua sponte* modified the parties' parenting plan, granting the father "tie-breaking authority" to schedule non-school-related extracurricular activities during the mother's co-parenting time on the condition that if the mother did not agree to a particular activity, the father would pay for and provide transportation to the activities. Neither party had filed a petition seeking to modify the parenting plan. The mother appeals this modification on the grounds that no material change in circumstance existed to justify modification of the parenting plan and argues further that the modification was not in the best interest of the children because it would likely create more disputes between the parties going forward. With regard to the criminal contempt determinations, the mother argues on appeal that her actions in scheduling the two doctor's visits were not "willful" as required for a finding of criminal contempt and that her action in taking the child to the walk-in clinic was precipitated by a medical emergency, a situation over which the parenting plan did not grant the father exclusive control. Upon thorough review, we discern no reversible error in the trial court's determination that the mother was guilty of three counts of criminal contempt for violating the permanent parenting plan and accordingly affirm that order in its entirety. Regarding the second order, we find as a threshold matter that the trial court did not have subject matter jurisdiction to modify the parties' parenting plan in the absence of a petition to modify or motion for relief from judgment. Accordingly, we vacate the trial court's order modifying the parties' permanent parenting plan.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed in Part, Vacated in Part; Case Remanded**

THOMAS R. FRIERSON, II, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P.J., M.S., and ARNOLD B. GOLDIN, J., joined.

H. Garth Click, Nashville, Tennessee, for the appellant, Samantha Marie Corenswet (Rain).

Rachel M. Thomas and Lindsay N. Sales, Nashville, Tennessee, for the appellee, Matthew Adam Corenswet.

## OPINION

### I. Factual and Procedural Background

The parties, Matthew Adam Corenswet ("Father") and Samantha Marie Corenswet Rain ("Mother") were divorced in the Third Circuit Court for Davidson County ("trial court") by final decree of divorce entered on October 6, 2021, following a four-day trial. The final decree of divorce incorporated a permanent parenting plan ("PPP"), in which the trial court designated Father as primary residential parent for the parties' two minor children, B.T. and E.C. (collectively, "the Children"). The PPP imposed a "joint, shared custody arrangement," which was to be carried out between the parties by exchanging the Children on a "week to week" basis on Friday evenings at 6:00 p.m. Relative to the parties' respective decision-making responsibilities for the Children, the PPP provided in relevant part:

A. DAY-TO-DAY DECISIONS

Each parent shall make decisions regarding the day-to-day care of the children while the children are residing with that parent, including any emergency decisions affecting the health or safety of the children.

B. MAJOR DECISIONS

Major decision[s] regarding the children shall be made as follows:

| | |
|---|---|
| Educational decisions | Mother |
| Non-emergency healthcare | Father |
| * * * | |
| Extracurricular activities | Father |

When practical, the Father shall consult with the Mother for any input she may have and attempt to reach a consensus regarding non-emergency healthcare and extracurricular activities decisions for the minor children. However, in the event of the parties' inability to reach a consensus, or, in the Father's opinion, a decision must be made without delay for the benefit of the children, the Father may act unilaterally, and his decision shall be final.

When practical, the Mother shall consult with the Father for any input he may have and attempt to reach a consensus regarding educational decisions for the minor children. However, in the event of the parties' inability to reach a consensus, or, in the Mother's opinion, a decision must be made without delay for the benefit of the children, the Mother may act unilaterally, and her decision shall be final. The Mother shall provide the Father with a written summary of the result of any PTO meeting or conference with the child or children's teacher(s) and/or any significant educational decision made by the Mother within 48 hours of same.

If the children are participating in a school related extracurricular activity, both parties shall be responsible for taking the children to their practices and games during their parenting time, unless they have scheduled a vacation out of town.

The PPP also enjoined the parties from, *inter alia*, "communicating with the other parent except in writing," and from "harassing, criticizing or making derogatory comments about the other party . . . in the presence of the minor children . . . under penalty of contempt of court."

In November 2021, B.T., was sent to the emergency room from school after he "passed out in PE class." Mother accompanied the child to the emergency room, where, after B.T. had been examined, the nurse submitted a referral for B.T. to see a "GI doctor" at a follow-up appointment. The doctor's office called Mother in December 2021 to schedule the follow-up appointment and informed Mother that the earliest available appointment date would be April 12, 2022. According to Mother, she did not schedule the appointment during that call; instead, she informed the doctor's office that Father would need to schedule the appointment. Mother then emailed Father about the phone call, but Father did not respond. According to Mother's testimony at trial, when the doctor's office called Mother a second time on December 21, 2022, to set up the follow-up appointment, Mother scheduled the appointment to preserve the April 2022 date. Mother emailed Father on the same day to inform him that she had done so, and the contents of the email were read into the record at trial as follows:

The office called me again. I do not want to be the liaison between you and them. I told them to schedule [B.T.] for 2:55 p.m. 4/12/22. If for whatever reason you are opposed to [B.T.] seeing [the doctor], then just cancel it.

Father did not respond to Mother's email until he responded by email on February 9, 2022, wherein he communicated in relevant part:

On December 21st, 2021, you notified me that you had scheduled an appointment for [B.T.] to see his gastroenterologist . . . on April 12, 2022, at 2:55 p.m.

***Why did you do this?***

Mother did not respond to this email from Father.

On February 26, 2022, according to Mother's testimony at trial, B.T. began "screaming and crying in pain" in the evening before his bedtime. Mother testified that B.T. eventually stopped crying and that she decided to wait until the next morning to take him to the doctor. Mother further testified that the next morning, she took B.T. to the Vanderbilt Clinic after discerning that B.T. was still in pain and after B.T. asked her to take him to the doctor. Mother did not consult with Father prior to taking B.T. to the clinic but informed him of the visit via email after the fact. According to Mother's testimony, personnel at the Vanderbilt Clinic scheduled a "follow-up urologist appointment" for B.T., which was to occur on March 2, 2022. On March 2, 2022, Mother took B.T. to the follow-up appointment after informing Father that it was to occur. On April 12, 2022, Mother took B.T. to the appointment she had previously scheduled with the gastroenterologist via telephone on December 21, 2021.

On August 4, 2022, Father filed a petition for criminal contempt against Mother, alleging thirteen counts of criminal contempt against Mother for purported violations of the PPP. In counts one through four, Father alleged that Mother had violated the PPP by scheduling and attending "non-emergency medical appointments" for B.T. without Father's consent. In counts five through ten, Father claimed criminal contempt against Mother for her alleged refusal "to take the boys to their martial arts classes" on five separate occasions in violation of the PPP. In counts eleven through thirteen, Father alleged criminal contempt against Mother for violating the PPP by failing to "send Father a written summary following [E.C.'s] parent-teacher conference," for making derogatory comments about Father to the Children, and for failing to exchange the Children at 4:00 p.m. on a date their school was not in session. Father sought "imprisonment for up to ten (10) days for each count of criminal contempt to run consecutively, and for a fine of $50.00 for each act of contempt."

The trial court heard evidence regarding Father's petition for contempt on January 12, 2023, and March 21, 2023. After the first day of the hearing, upon oral motion for judgment of acquittal by Mother's counsel, the trial court entered an order dismissing eight counts of the petition, counts five through twelve, with prejudice. Following the second day of the hearing, the trial court dismissed counts three and thirteen but found Mother in criminal contempt for the three remaining counts: count one (scheduling the April 12, 2022 gastroenterologist appointment for B.T. in violation of the PPP), count two (taking B.T. to the Vanderbilt Clinic on February 27, 2022, in violation of the PPP), and count four (taking B.T. to the follow-up urologist's appointment on March 2, 2022, in violation of the PPP).

The trial court sentenced Mother to two days in jail each relative to counts one and two and five days in jail regarding count four. Upon the conclusion of proof on March 21, 2023, the trial court orally ordered Mother to report to the Davidson County Sheriff's custody on March 31, 2023, for her first two days of jail time. However, upon subsequent written motion by Mother's counsel, the trial court ordered a stay of enforcement of the judgment pending appeal.

On April 12, 2023, the trial court entered two orders. The first was an order memorializing its findings on the petition for criminal contempt against Mother. The second was a *sua sponte* order modifying the PPP to reflect a change in language related to the parties' decision-making powers concerning the Children's extra-curricular activities. The second order added language to the PPP granting Father "tie-breaking authority" over decisions related to the Children's non-school-related extracurricular activities. The order also provided that should Mother not agree to a non-school-related activity selected by Father, Father could take the Children to the activity, regardless of whether or not it was Mother's co-parenting time, provided that Father paid for and provided transportation for the activity. Mother timely appealed the trial court's decisions in both orders.

## II. Issues Presented

Mother presents the following issues for this Court's review, which we have reordered and restated as follows:

1. Whether the trial court erred by finding that sufficient evidence supported a judgment of criminal contempt beyond a reasonable doubt as to counts one, two, and four of Father's petition.

2. Whether the trial court erred by finding that a material change in circumstance existed such that modification of the PPP related to the parties' decision-making powers respecting the Children's

- 5 -

extracurricular activities was warranted, and whether such modification was in the best interest of the Children.

Father presents the following additional issue on appeal:

3.      Whether Father is entitled to an award of attorney's fees on appeal.

## III.  Standard of Review

We review a non-jury case *de novo* upon the record with a presumption of correctness as to the findings of fact unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Bowden v. Ward,* 27 S.W.3d 913, 916 (Tenn. 2000).  We review questions of law, including those of statutory construction, *de novo* with no presumption of correctness.  *Bowden*, 27 S.W.3d at 916 (citing *Myint v. Allstate Ins. Co.,* 970 S.W.2d 920, 924 (Tenn. 1998)); *see also In re Estate of Haskins*, 224 S.W.3d 675, 678 (Tenn. Ct. App. 2006).  The trial court's determinations regarding witness credibility are entitled to great weight on appeal and shall not be disturbed absent clear and convincing evidence to the contrary.  *See Morrison v. Allen*, 338 S.W.3d 417, 426 (Tenn. 2011); *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002).

"[A] trial court's use of its contempt power is within its sound discretion and will be reviewed by an appellate court under an abuse of discretion standard."  *McClain v. McClain*, 539 S.W.3d 170, 187 (Tenn. Ct. App. 2017) (citation and internal quotation marks omitted).  "An abuse of discretion occurs when the trial court causes an injustice by applying an incorrect legal standard, reaches an illogical result, resolves the case on a clearly erroneous assessment of the evidence, or relies on reasoning that causes an injustice."  *In re Brown*, 470 S.W.3d 433, 442 (Tenn. Ct. App. 2015) (quoting *Gonsewski v. Gonsewski*, 350 S.W.3d 99, 105 (Tenn. 2011)).  At trial, the "[o]ne charged with criminal contempt is presumed innocent until found guilty beyond a reasonable doubt."  *Watkins ex rel. Duncan v. Methodist Healthcare Sys.*, No. W2008-01349-COA-R3-CV, 2009 WL 1328898, at *3 (Tenn. Ct. App. May 13, 2009) (quoting *Robinson v. Air Draulics Engineering Co.*, 377 S.W.2d 908, 912 (Tenn. 1964)).  "On appeal following a finding of contempt, however, the defendant must overcome the presumption of guilt by demonstrating that the evidence preponderates against the trial court's findings."  *Id*.

Regarding modification of a permanent parenting plan, our Supreme Court has explained:

A trial court's determinations of whether a material change in circumstances has occurred and whether modification of a parenting plan serves a child's best interests are factual questions. *See In re T.C.D.*, 261 S.W.3d 734, 742 (Tenn. Ct. App. 2007).  Thus, appellate courts must

- 6 -

presume that a trial court's factual findings on these matters are correct and not overturn them, unless the evidence preponderates against the trial court's findings. *See* Tenn. R. App. P. 13(d); *In re C.K.G.*, 173 S.W.3d [714,] 732 [(Tenn. 2005)]; *Kendrick* [*v. Shoemake*], 90 S.W.3d [566,] 570 [(Tenn. 2002)]; *Hass* [*v. Knighton*], 676 S.W.2d [554,] 555 [(Tenn. 1984)].

*Armbrister v. Armbrister*, 414 S.W.3d 685, 692-93 (Tenn. 2013).

IV. Criminal Contempt of Court

Here, the trial court determined, based on the evidence presented during the hearing, that Mother was guilty of three counts of criminal contempt for violations of the PPP. Regarding criminal contempt proceedings, this Court has clarified that

the purpose of a criminal contempt proceeding is to vindicate the authority of the law and the court. *State ex rel. Agee v. Chapman*, 922 S.W.2d [516,] 519 [(Tenn. Ct. App. 1995)]; *Thigpen v. Thigpen*, 874 S.W.2d 51, 53 (Tenn. Ct. App. 1993). It is a punitive proceeding intended to impose a fixed punishment for past actions. *Sitton v. Finley*, 743 S.W.2d 933, 935 (Tenn. Crim. App. 1987).

*Jones v. Jones*, No. 01A01-9607-CV-00346, 1997 WL 80029, at *2 (Tenn. Ct. App. February 26, 1997).

As elucidated by the Tennessee Court of Criminal Appeals, "the court's authority to punish certain acts as contempt derives from statute, and is limited to the forms of conduct set forth in Tennessee Code Annotated § 29-9-102." *See State v. Turner*, 914 S.W.2d 951, 955 (Tenn. Ct. App. 1995); *see also Black v. Blount*, 938 S.W.2d 395, 397 (Tenn. 1996) ("Because unlimited, undefined discretionary power carried with it the potential for abuse, specific statutory provisions were adopted to limit and define the conduct punishable by contempt."). Tennessee Code Annotated § 29-9-102 provides:

The power of the several courts to issue attachments, and inflict punishments for contempts of court, shall not be construed to extend to any except the following cases:

(1)     The willful misbehavior of any person in the presence of the court, or so near thereto as to obstruct the administration of justice;

(2)     The willful misbehavior of any of the officers of such courts, in their official transactions;

(3)     The willful disobedience or resistance of any officer of the such courts, party, juror, witness, or any other person, to any lawful writ, process, order, rule, decree, or command of such courts;

(4)     Abuse of, or unlawful interference with, the process or proceedings of the court;

(5)     Willfully conversing with jurors in relation to the merits of the cause in the trial of which they are engaged, or otherwise tampering with them; or

(6)     Any other act or omission declared a contempt by law.

A.  Counts One and Four of the Petition for Criminal Contempt

In counts one and four of Father's petition for contempt, Father accused Mother of scheduling doctor's appointments in violation of the PPP provision granting Father exclusive control over non-emergency medical decisions. Counts one and four implicated the provision found in Tennessee Code Annotated § 29-9-102(3), which states that a trial court can punish an individual for "willful disobedience" of a court order. As to count one, the trial court determined that Mother was guilty of criminal contempt for scheduling an April 12, 2022 gastroenterologist's appointment for B.T. in violation of the PPP. In so determining, the trial court stated:

In regard to Count 1, the Court found that Mother scheduled a gastroenterologist appointment for [B.T.]. The Court finds beyond a reasonable doubt that the Court's Permanent Parenting Plan Order on this issue is an enforceable order under the law and it is unambiguous that Mother shall not schedule medical appointments for the parties' minor children. The Mother clearly violated the order. The Court finds Mother's behavior was willful and that she understood she was not to schedule medical appointments for the parties' minor children, this task being reserved to the Father. Thus, the Court finds Mother guilty of willful criminal contempt beyond a reasonable doubt as to Count 1.

As to count four, the trial court found Mother guilty of criminal contempt for scheduling an appointment for B.T. with a urologist on March 2, 2022. In so determining, the trial court stated:

In regard to Count 4, the Court finds beyond a reasonable doubt that Mother took [B.T.] to the urologist on March 2, 2022 in violation of the permanent parenting plan. The Court finds that the Permanent Parenting Plan Order on this issue of non-emergency medical treatment is an

enforceable order of the Court and is clear and unambiguous. The Court finds the Mother violated the Court's order and Mother's behavior was willful. The Court finds Mother guilty beyond a reasonable doubt as to Count 4.

When the charge of criminal contempt is related to an alleged violation of a court order—in this case the PPP—this Court has explained:

> The "four essential elements" for a contempt finding are well-known. *Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 354-55 (Tenn. 2008); *Furlong v. Furlong*, 370 S.W.3d 329, 336 (Tenn. Ct. App. 2011). The order allegedly violated must be lawful. *Konvalinka*, 249 S.W.3d at 354. The order must also be clear and unambiguous. *Id.* The individual charged **"**must have actually disobeyed . . . the order." *Id.* at 355. And the violation must be willful. *Id.*

*Blankenship CPA Grp., PLLC v. Wallick*, No. M2022-00359-COA-R3-CV, 2023 WL 6420443, at *3 (Tenn. Ct. App. Oct. 3, 2023).

Mother does not dispute that the first three elements for contempt are present as to both counts one and four in that: (1) the PPP constituted a lawful order; (2) the PPP constituted a clear and unambiguous order with respect to Father's decision-making authority over non-emergency healthcare for the minor children; and (3) Mother disobeyed the PPP when she scheduled and took B.T. to both the April 4, 2022 doctor's appointment, as alleged in count one, and the March 2, 2022 urologist's appointment, as alleged in count four. However, regarding the fourth element, Mother argues that regarding her actions in scheduling both appointments, "the willfulness is clearly missing."

Regarding the willfulness element for criminal contempt of court, our Supreme Court has instructed:

> The fourth issue focuses on the willfulness of the person alleged to have violated the order. The word "willfully" has been characterized as a word of many meanings whose construction depends on the context in which it appears. *Spies v. United States,* 317 U.S. 492, 497, 63 S. Ct. 364, 87 L. Ed (1943); *United States v. Phillips,* 19 F.3d 1565, 1576-77 (11th Cir. 1994). Most obviously, it differentiates between deliberate and unintended conduct. *State ex rel. Flowers v. Tenn. Trucking Ass'n Self Ins. Group Trust*, 209 S.W.3d [602,] 612 [(Tenn. Ct. App. 2006]. However, in criminal law, "willfully" connotes a culpable state of mind. In the criminal context, a willful act is one undertaken for a bad purpose. *Bryan v. United States,* 524 U.S. 184, 191, 118 S. Ct. 1939, 141 L. Ed. 2d 197 (1998); *State v. Braden,* 867 S.W.2d 750, 761 (Tenn. Crim. App. 1993) (upholding an instruction

stating that "[a]n act is done willfully if done voluntarily and intentionally and with the specific intent to do something the law forbids").

*Konvalinka v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 249 S.W.3d 346, 356-57 (Tenn. 2008).

As to count one, in which Father accused Mother of criminal contempt for scheduling the April 12, 2022 appointment for B.T., Mother asserts that she "did not take an action with the intent to violate a court order but rather to preserve as early an appointment as possible for the minor child to receive follow-up care from a visit to the emergency room." She further asserts that in scheduling the appointment, she did "not act for a bad purpose" but instead "took action to ensure the well-being of the minor child."

In *Nolan v. Nolan*, No. W2021-01018-COA-R3-CV, 2023 WL 4559883 (Tenn. Ct. App. July 17, 2023), this Court recently upheld a trial court's finding of criminal contempt against a father who similarly argued that he lacked the willfulness element for a criminal contempt charge because he had acted with the child's best interest in mind. *Id*. at *20. The father had made comments about his minor child's clothing, and the trial court had found him in contempt for violating a consent order limiting his ability to make any such comments regarding the child's apparel. *Id.* at *19-20. On appeal, the father argued that his comments about the child's clothing were not contemptuous because they were not "willful" but were rather meant to be positive and to help the child by "encouraging the child not to wear the clothing," *Id.* at *20. In declining to overturn the trial court's finding of contempt, the *Nolan* Court explained:

> [W]illfulness in criminal contempt is the specific intent to do some forbidden act. *Konvalinka*, 249 S.W.3d at 357. Here, Mr. Nolan testified that he suggested the child's clothing was childish for the purpose of encouraging the child not to wear the clothing. Mr. Nolan, however, expressly agreed to a limitation on his ability to criticize his child's clothing under the Consent Order**.** The question before us is not whether such a limitation, which was agreed to and not challenged, should exist. The question before this court is whether Mr. Nolan had the specific intent to criticize the child's clothing to the child. We conclude that, even if Mr. Nolan's underlying motives may have been laudatory, a rational trier of fact could conclude that he had the specific intent to criticize the child's clothing in order to make the child reluctant to wear the clothing. *See Thigpen v. Thigpen*, 874 S.W.2d 51, 53-54 (Tenn. Ct. App. 1993) (concluding that a mother's decision to engage in a scuffle with the father at the child's school, when the child wanted her to take him to an appointment but the father physically grabbed the child, may have been done pursuant to "her maternal desire to help her son avoid a disturbing situation" or "provoked" and "well-intentioned" but was nevertheless willful and in conflict with the court's

- 10 -

order).  Accordingly, the evidence is sufficient to uphold a contempt finding on this count.

*Nolan*, 2023 WL 4559883, at *20.

Applying the rationale from *Nolan* to the case at bar, the question is not whether the limitations on non-emergency medical decisions imposed upon Mother by the PPP should exist or even whether such limitations are reasonable as applied to these facts.  The question is whether Mother had the specific intent to schedule the medical appointments for B.T. on April 12, 2022, and on March 2, 2022.  Mother readily admitted both at the contempt hearing and in her appellate brief that she intentionally scheduled those appointments and that she knew the PPP granted to Father the decision-making authority concerning non-emergency medical appointments for the Children.  Mother contends that her intention in scheduling the appointments was positive because she did so to "ensure the well-being of the minor child[,]" and, as such, the willfulness element for contempt was lacking.  However, as in *Nolan*, Mother's good motive in scheduling the appointments does not suffice to overturn the trial court's finding that her action in setting both appointments was willful.  *See id.* at *20.  Mother scheduled the appointments with specific intent to do so and in full knowledge that such actions were in violation of the PPP.

Regarding count four, wherein Mother was accused of scheduling and taking B.T. to a urologist's appointment on March 2, 2022, Mother avers that because Father had "given permission in writing" for her to take B.T. to the urologist's appointment on the day of the appointment, there was "no willful intent to violate the court order as there was no violation of the court order."  However, Father's eventual consent to the March 2, 2022 appointment does not negate the fact that Mother scheduled that appointment with specific intent to violate the PPP before Father consented to the appointment.  Furthermore, although the *Nolan* Court found that "a willful act is one undertaken for a bad purpose," *see id.* at *18, the Court further clarified that "[a] contemnor's testimony that he or she did not believe the action was a violation of an order is not, however, an automatic get-out-of-jail-free card."  *See id.* at *20.  Accordingly, we find that the trial court did not abuse its discretion in finding Mother in criminal contempt concerning counts one and four of Father's petition.

### B.  Count Two of the Petition for Criminal Contempt

Mother argues that the trial court erred in finding her in criminal contempt as to count two of Father's petition wherein Father accused her of taking B.T. to the Vanderbilt Clinic on February 27, 2022, without Father's consent in violation of the PPP.  In finding Mother in contempt respecting count two, the trial court determined:

In regard to Count 2, the Court finds beyond a reasonable doubt that Mother took [B.T.] to a Vanderbilt Clinic.  The Court finds that Mother did

- 11 -

not consider [B.T.'s] condition to be an emergency the evening before and, in fact, she consulted [B.T.] on the following morning as to whether he believed he needed to go to the doctor's office and at the child's request, the Mother took the child to the Vanderbilt Clinic. The Court finds that taking [B.T.] to the Vanderbilt Clinic on February 27, 2022 was not an emergency. The Court finds Mother's behavior was willful. The Court finds that the Court's Order on the issue of non-emergency medical treatment which was reserved to the Father. The Court further finds it's an enforceable order of the Court and is clear and unambiguous. The Mother violated the Order and thus, the Court finds Mother guilty beyond a reasonable doubt of willful criminal contempt as to Count 2.

In her appellate brief, Mother does not dispute that she took B.T. to the clinic on February 27. 2022, and does not dispute that non-emergency medical decisions were reserved for Father in the PPP. Instead, Mother argues that the visit to the Vanderbilt Clinic was the result of a medical emergency over which she, as the custodial parent at the time of the emergency, retained the authority to address as she chose. Mother posits that because the situation was a medical emergency, Father's exclusive control over "non-emergency" medical decisions pursuant to the PPP should not apply. Mother further contends that regardless of whether B.T.'s condition was indeed an emergency, her belief at the time that it was an emergency negated the willfulness element necessary for a finding of criminal contempt. *See Blankenship*, 2023 WL 6420443, at *3.

In support of her postulate that taking B.T. to the Vanderbilt Clinic was an emergency medical decision, Mother avers that B.T. was in severe pain the night before the clinic visit and still in some pain the next morning. She further avers that clinic personnel scheduled a follow-up appointment for B.T. to occur a few days after they had examined B.T. According to Mother, this "pain plus medical providers setting an appointment with specialists for the minor child shortly after the visit [to the Clinic] should equal an emergency medical decision."

However, Mother's proffered definition of "medical emergency" in her appellate brief does not comport with the trial court's express instructions as to what should constitute a "medical emergency" as contemplated by the PPP. In the final decree of divorce, the trial court defined "medical emergency" as "any circumstance where one or both of the children need <u>immediate</u> medical attention as a result of illness or injury." (Emphasis added.) The trial court further provided that in the event of such a medical emergency, "the possessory parent shall <u>immediately</u> notify the other parent by any means available informing them of the circumstances" (emphasis added). Mother did not take B.T. to the Vanderbilt Clinic immediately upon learning of B.T.'s pain. Instead, she waited until the next morning. Furthermore, Mother failed to immediately notify Father of B.T.'s condition. Considering these facts in light of the trial court's definition of "medical

emergency" contained in the final decree of divorce, we determine that B.T.'s condition did not constitute a medical emergency. Mother's argument on this point is unavailing.

As to Mother's argument that her actions were not willful because she believed B.T.'s condition constituted a medical emergency, the trial court determined that Mother did not believe that B.T. required immediate medical attention because she learned of B.T.'s pain on the evening of February 26, 2022, yet did not take B.T. to the clinic until the next morning, and then only after consulting with B.T. about his pain level. In contrast to her assertion on appeal, Mother admitted at trial that although she thought B.T.'s condition was "urgent," she did not consider the situation an emergency. Mother testified:

> Trial Court: All right. Help me with this. You say the night before on the 26th that [B.T.] had trouble urinating, and it was burning or hurting. Did you take—what time was this?
>
> Mother: It was before bedtime, so it wasn't in the middle of the night. It was before bed.
>
> Trial Court: Now, did you take him that night?
>
> Mother: No.
>
> Trial Court: How did you assuage his pain? How did you stop his pain, or did he just not pee?
>
> Mother: Well, he stopped crying, and then we talked about it. And I asked if he wanted to go to the doctor the next morning, and he said yes.
>
> * * *
>
> Trial Court: I understand. I guess my question is, you know that the father is supposed to deal with these medical issues. You didn't consider it a big enough emergency to put him in the car and take him to the ER; is that correct?
>
> Mother: Yes, You[r] Honor.
>
> Trial Court: And is there any reason you didn't pick up the phone and call Dad and say, "It's hurting when he's peeing, and you need to take him to the emergency room or you need to take him to the doctor tomorrow morning?" Did you have any communication with the father on the 26th?

- 13 -

Mother:          No, Your Honor.

Mother further testified that she took B.T. to the clinic the next morning after determining that B.T. was "still hurting" but that his pain "wasn't as severe." These facts support the trial court's determination that Mother did not believe the situation was an emergency and that she willfully violated the PPP. Mother's argument lacks sufficient evidentiary support to meet her burden to overturn the presumption of guilt for criminal contempt on appeal, *see Robinson v. Air Draulics Engineering Co.*, 377 S.W.2d 908, 912 (Tenn. 1964), and for that reason we will not disturb the trial court's decision finding Mother in criminal contempt of court as to count two of Father's petition.

### V.   Modification of the Permanent Parenting Plan

Mother contends that the trial court erred in *sua sponte* modifying the PPP to clarify the parents' respective decision-making authority over the Children's extra-curricular activities. On April 12, 2023, the trial court entered a separate order modifying the PPP, which stated:

> The Court finds there exists a material change in circumstances affecting the best interests of the minor children such that a modification of the Court's October 6, 2021 *Permanent Parenting Plan* is warranted. Namely, the last bolded paragraph of Section II. DECISION-MAKING B. MAJOR DECISIONS found on Page 6 of the October 6, 2021 *Permanent Parenting Plan* stating in pertinent part:
>
> > **If the children are participating in a school related extracurricular activity, both parties shall be responsible for taking the children to their practices and games during their parenting time, unless they have scheduled a vacation out of town.**
>
> Shall be <u>stricken</u> in its entirety and <u>replaced</u> with the following language as if fully stated verbatim in the October 6, 2021 *Permanent Parenting Plan*:
>
> > **If the children are participating in a school related extracurricular activity, both parties shall be responsible for taking the children to their event, practices and/or games during their parenting time, unless they have scheduled a vacation out of town.**
> >
> > **For any agreed-upon extracurricular activity, each party shall be responsible for taking the children to their**

- 14 -

**practices and games during his/her parenting time and each parent shall be responsible for half (1/2) of the fees and expenses associated with the agreed-upon extracurricular activity.**

**In the event the parties reach an impasse on an extracurricular activity, Father shall have the tie-breaking authority only after first consulting Mother. If Father decides to allow the children to participate in an extracurricular activity that is not agreed-upon by Mother, Father shall be responsible for transporting the children during Mother's parenting time to and from games and practices and Father shall be solely responsible for the fees and expenses associated with same.**

Mother contends that this modification of the PPP was not in the Children's best interest because it granted Father "unilateral authority to dictate and control [Mother's] visitation time with the minor children by being able to schedule any and all extra-curricular activities as he so chooses." Furthermore, Mother posits that this modification will create further conflict between the parties "wherein [Father] will want to take [the children] to some form of practice and [Mother] will want them to do their schoolwork." Additionally, Mother asserts that this arrangement will result in a "standoff on whose decision-making controls."

Before reaching the substantive arguments raised by Mother regarding whether there was a material change in circumstance to justify the modification and whether the modification was in the Children's best interest, we must determine whether the trial court had subject matter jurisdiction to issue the order *sua sponte*. The record contains no evidence that either party had petitioned the trial court for modification of the parenting plan. Regarding a trial court's authority to modify a permanent parenting plan in a post-divorce proceeding, this Court has explained:

Generally, trial courts have exclusive and continuing subject matter jurisdiction over post-divorce child custody disputes. *See* Tenn. Code Ann. § 36-6-101(a)(1) (2017) (providing that a final decree of divorce "shall remain within the control of the court and be subject to such changes or modification as the exigencies of the case may require"); *Id*. at § 36-6-217 (providing for "exclusive, continuing jurisdiction" over child custody determinations); *Id*. at § 36-6-101(a)(2)(B)(i) (allowing petitions to modify a permanent parenting plan where there has been "a material change in circumstance"). Courts may not, however, modify permanent parenting plans sua sponte. *Hodge v. Hodge*, No. M2006-01742-COA-R3-CV, 2007 WL 3202769 (Tenn. Ct. App., filed Oct. 31, 2007).

- 15 -

In *Hodge*, the trial court granted the parties a divorce and established a permanent parenting plan. 2007 WL 3202769, at *1. Two years later, the court entered an order sua sponte appointing a special master to preside over the case and giving the special master authority to modify the permanent parenting plan. *Id*. There was no evidence in the record that either parent had petitioned the court for modification of the parenting plan. *Id*. On appeal, this Court held that

> the trial court lacked the right to exercise its jurisdiction because all matters previously in dispute had been fully adjudicated, the decrees previously rendered had become final judgments two years earlier, and neither party had filed the requisite petition (complaint) and summons to afford the trial court the right to exercise its "exclusive jurisdiction" over the domestic decrees it had previously entered.

*Id*. We proceeded to explain that "[a]lthough the trial court retains 'exclusive control' over the domestic relations decrees it entered in what have become final judgments, the trial court loses 'the right to exercise' its exclusive control over the 'closed domestic relations file' unless and until a party 'takes the steps to invoke the court's jurisdiction.'" *Id*. at *3 (citing *Levy v. Bd. of Zoning Appeals*, No. M1999-00126-COA-R3-CV, 2001 WL 1141351, at *4 (Tenn. Ct. App., filed Sept. 27, 2001)). We specifically identified two ways "to awaken the trial court's jurisdiction from this period of rest[.]" *Id*. at *4. First, a parent may "file a petition (or complaint) for modification along with a proposed parenting plan pursuant to Tenn. Code Ann. § 36-6-405[.]" *Id*. (citing *Levy*, 2001 WL 1141351, at *4). Alternatively, a parent may file "a Rule 60 motion for relief from the judgment." *Id*. Because there was no evidence in the record that either parent filed anything with the trial court, we held that the trial court's actions were void. *Id*.

*Freeman v. Freeman*, 579 S.W.3d 1, 4-5 (Tenn. Ct. App. 2018) (emphasis added).

In the instant action, neither of the two methods outlined in *Freeman* to "awaken the trial court's jurisdiction" were present when the trial court issued its *sua sponte* order modifying the PPP. Although the parties had continued to litigate post-divorce, namely over Father's petition for contempt against Mother, the record reflects that neither party had filed a petition to modify the PPP or a Rule 60 motion for relief from the final decree for divorce and final judgment.[1] In this case, as in *Hodge*, the trial court issued the order

---

[1] The record reflects that Mother filed a motion to alter or amend the final decree on November 5, 2021, pursuant to Tennessee Rule of Civil Procedure 59.04, requesting that the trial court grant Mother "medical

to modify on its own initiative in a purported attempt to resolve continuing conflict between the parties after the final decree of divorce had been entered. *See Hodge v. Hodge*, No. M2006-01742-COA-R3-CV, 2007 WL 3202769, at \*1 (Tenn. Ct. App., filed Oct. 31, 2007). We therefore find that, as in *Hodge*, the trial court here lacked subject matter jurisdiction to modify the PPP because "neither party had filed the requisite petition (complaint) and summons to afford the trial court the right to exercise its 'exclusive jurisdiction' over the domestic decrees it had previously entered." *See id.* Accordingly, we vacate the trial court's April 12, 2023 order modifying the PPP.

## VI. Attorney's Fees on Appeal

As his sole issue on appeal, Father asserts that Mother should be ordered to pay his attorney's fees incurred in defending this appeal pursuant to Tennessee Code Annotated § 36-5-103(c) (2021), which provides:

> A prevailing party may recover reasonable attorney's fees, which may be fixed and allowed in the court's discretion, from the nonprevailing party in any criminal or civil contempt action or other proceeding to enforce, alter, change, or modify any decree of alimony, child support, or provision of a permanent parenting plan order, or in any suit or action concerning the adjudication of the custody or change of custody of any children, both upon the original divorce hearing and at any subsequent hearing.

Father also submits that because "Mother has failed to substantiate her arguments on appeal with factual support of legal authority," he is entitled to his attorney's fees on appeal pursuant to Tennessee Code Annotated § 27-1-122, which gives this Court authority to award damages, including attorney's fees, against an appellant if the appeal "was frivolous or taken solely for delay."

Any award of attorney's fees "rests in the appellate court's sound discretion." *See Eberbach v. Eberbach*, 535 S.W.3d 467, 475 (Tenn. 2017) (citing *Chiozza v. Chiozza*, 315 S.W.3d 482, 493 (Tenn. Ct. App. 2009)). "This discretion is exercised sparingly so as not to discourage legitimate appeals." *See id.* (internal quotation marks and citation omitted). Here, Mother's appeal, as it relates to the trial court's order modifying the PPP, was successful in that it resulted in vacatur of the modification order. Ergo, Mother's appeal was not frivolous. We further conclude that Mother's appeal was not taken in bad faith or solely for delay, and we note that nothing in the record indicates that Father is unable to

---

decision-making authority" or, in the alternative, that Mother be granted limited authority to take the Children to "receive the Covid-19 vaccine." The motion to alter or amend was resolved in its entirety by an agreed order entered on November 10, 2021, wherein the trial court expressly stated that the agreed order constituted a final order on the matter.

pay his own attorney's fees on appeal. Accordingly, we decline to award attorney's fees on appeal to Father pursuant to either statute.

## VII. Conclusion

For the reasons stated above, we affirm the trial court's order on Father's petition for criminal contempt, dated April 12, 2023, finding Mother guilty on three counts of criminal contempt. We vacate in its entirety the trial court's separate order modifying the PPP, also entered on April 12, 2023, because the trial court lacked subject matter jurisdiction to modify the PPP *sua sponte*. We decline to award attorney's fees to Father on appeal. This case is remanded to the trial court for enforcement of its contempt judgment and collection of costs assessed below. Costs on appeal shall be assessed one-half to the appellant, Samantha Marie Corenswet (Rain), and one-half to the appellee, Matthew Adam Corenswet.

s/Thomas R. Frierson, II

_____
THOMAS R. FRIERSON, II, JUDGE