IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
October 16, 2018 Session

**TRAVIS DANIEL FREEMAN v. WENDY Y. FREEMAN**

**Appeal from the Domestic Relations Court for Meigs County**
**No. D-1389   Casey Mark Stokes, Judge**

_____

**No. E2017-02110-COA-R3-CV**

_____

This appeal concerns the proper method of invoking a trial court's subject matter jurisdiction in a proceeding to modify a permanent parenting plan. About one year after the parties' divorce, Travis Freeman (father) filed a petition to modify the court-ordered custody arrangement and attached a proposed permanent parenting plan pursuant to Tenn. Code Ann. § 36-6-405(a) (2017).[1] Wendy Freeman (mother) opposed the requested modification. The trial court subsequently entered two orders gradually expanding father's co-parenting time. Later, father filed another motion seeking greater expansion of his co-parenting time and/or designation as the primary residential parent. Father did not attach a new proposed parenting plan to this motion. Ultimately, the trial court ordered a new permanent parenting plan that retained mother as the primary residential parent but granted father additional co-parenting time. Mother appeals. She argues that father did not properly invoke the trial court's subject matter jurisdiction because father did not attach a new proposed parenting plan to his most recent motion to modify the custody arrangement. We agree with mother that father was statutorily required to submit a new proposed parenting plan pursuant to Tenn. Code Ann. § 36-6-405(a); nevertheless, we hold that father's petition to modify the parenting plan was sufficient to invoke the trial court's jurisdiction. Accordingly, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Domestic Relations Court Affirmed; Case Remanded**

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and THOMAS R. FRIERSON, II, J., joined.

Joseph H. Crabtree, Jr., Athens, Tennessee, for the appellant, Wendy Y. Freeman.

_____

[1] The statute provides, in pertinent part, that "[i]n a proceeding for a modification of a permanent parenting plan, a proposed parenting plan shall be filed and served with the petition for modification. . . ." Tenn. Code Ann. § 36-6-405(a).

Matthew C. Rogers, Athens, Tennessee, for the appellee, Travis Daniel Freeman.

**OPINION**

**I.**

The material facts of this case are not in dispute.  In 2013, the domestic relations court for Meigs County[2] granted mother and father a divorce and established a permanent parenting plan that the parties agreed was in the best interest of their child, I.H.F.  The permanent parenting plan designated mother as the primary residential parent and awarded father supervised visitation for two hours every Saturday.  The court's order also provided that

> [a]fter January, 2014, should [father] so desire, he may request to remove the supervised requirement and to expand visitation by sending a letter to [mother's] attorney.  If this request is denied, [father] may file a petition requesting a change if there has been a change in circumstances.

On November 7, 2014, father filed a petition to modify the custody arrangement and attached a proposed permanent parenting plan pursuant to Tenn. Code Ann. § 36-6-405(a).  Under father's proposed parenting plan, mother would continue to parent the child during the week while school was in session and father would parent the child every weekend from Friday at 6:00 p.m. to Sunday at 6:00 p.m.  During the summer, the residential schedule would be flipped.  In addition, father's proposed plan divided holidays equally.  On December 29, 2015, the court entered an order that modified the residential schedule by granting father unsupervised visitation from 10:00 a.m. to 7:00 p.m. every Saturday "for a period of one year after which Father can petition the court for further modification."

On April 7, 2016, before the one-year period had elapsed, father filed a motion for the early expansion of his co-parenting time.  On August 11, 2016, after a hearing on father's motion, the court ordered "[t]hat the father's co-parenting time shall be extended to overnight visits from Saturday at 10:00 a.m. through Sunday evening at 6:00 p.m. beginning on the first weekend in October, 2016."

On January 31, 2017, father filed another motion requesting the court to "expand his co-parenting time and/or grant him primary parenting status."  After a hearing on father's motion, the court entered an order that included the following findings:

---

[2] By private act, the general assembly "conferred domestic relations jurisdiction on the General Sessions Court of Meigs County and while it is exercising domestic relations jurisdiction it shall be known as the domestic relations court of Meigs County."  2000 Tenn. Priv. Acts ch. 117 § 1.

- 2 -

The father started off this case back in November 2014 and the Court instructed him then that this would be a slow and gradual process and the Court is impressed with and appreciative of the father's efforts in building and maintaining a relationship with the minor child as well as his efforts that have resolved any child support arrearage issue[s] that the father had when he first filed his petition to modify the permanent parenting plan and request for additional co-parenting time.

Accordingly, on September 27, 2017, the court ordered a new permanent parenting plan that granted father "standard co-parenting time" during the school year (every other weekend from Friday at 6:00 p.m. to Sunday at 6:00 p.m.) and equal co-parenting time during the summer (alternating weeks from Sunday at 6:00 p.m. to Sunday at 6:00 p.m.). The court also divided holidays equally between both parents. The court indicated that this order was a "final judgment." Mother appealed directly to this Court.[3]

## II.

Mother raises one issue for our review: whether father failed to properly invoke the trial court's subject matter jurisdiction because father did not attach a new proposed permanent parenting plan to his January 31, 2017 motion to modify custody.

## III.

A determination of whether a trial court had subject matter jurisdiction is a question of law that we review de novo, without affording a presumption of correctness to the trial court's finding. ***Redwing v. Catholic Bishop for Diocese of Memphis***, 363 S.W.3d 436, 446 (Tenn. 2012).

Generally, trial courts have exclusive and continuing subject matter jurisdiction over post-divorce child custody disputes. *See* Tenn. Code Ann. § 36-6-101(a)(1) (2017) (providing that a final decree of divorce "shall remain within the control of the court and be subject to such changes or modification as the exigencies of the case may require"); *Id.* at § 36-6-217 (providing for "exclusive, continuing jurisdiction" over child custody determinations); *Id.* at § 36-6-101(a)(2)(B)(i) (allowing petitions to modify a permanent

---

[3] The private act creating the domestic relations court for Meigs County provides that "[a]ppeals from the judgments of the domestic relations court arising under this act shall be to the court of appeals or to the Supreme Court in the same manner as provided in such cases from the chancery and circuit courts." 2000 Tenn. Priv. Acts ch. 117 § 4.

parenting plan where there has been "a material change in circumstance"). Courts may not, however, modify permanent parenting plans sua sponte. ***Hodge v. Hodge***, No. M2006-01742-COA-R3-CV, 2007 WL 3202769 (Tenn. Ct. App., filed Oct. 31, 2007).

In ***Hodge***, the trial court granted the parties a divorce and established a permanent parenting plan. 2007 WL 3202769, at *1. Two years later, the court entered an order sua sponte appointing a special master to preside over the case and giving the special master authority to modify the permanent parenting plan. ***Id.*** There was no evidence in the record that either parent had petitioned the court for modification of the parenting plan. ***Id.*** On appeal, this Court held that

> the trial court lacked the right to exercise its jurisdiction because all matters previously in dispute had been fully adjudicated, the decrees previously rendered had become final judgments two years earlier, and neither party had filed the requisite petition (complaint) and summons to afford the trial court the right to exercise its "exclusive jurisdiction" over the domestic decrees it had previously entered.

***Id.*** We proceeded to explain that "[a]lthough the trial court retains 'exclusive control' over the domestic relations decrees it entered in what have become final judgments, the trial court loses 'the right to exercise' its exclusive control over the 'closed domestic relations file' unless and until a party 'takes the steps to invoke the court's jurisdiction.'" ***Id.*** at *3 (citing ***Levy v. Bd. of Zoning Appeals***, No. M1999-00126-COA-R3-CV, 2001 WL 1141351, at *4 (Tenn. Ct. App., filed Sept. 27, 2001)). We specifically identified two ways "to awaken the trial court's jurisdiction from this period of rest[.]" ***Id.*** at *4. First, a parent may "file a petition (or complaint) for modification along with a proposed parenting plan pursuant to Tenn. Code Ann. § 36-6-405[.]" ***Id.*** (citing ***Levy***, 2001 WL 1141351, at *4). Alternatively, a parent may file "a Rule 60 motion for relief from the judgment." ***Id.*** Because there was no evidence in the record that either parent filed *anything* with the trial court, we held that the trial court's actions were void. ***Id.***

Here, unlike ***Hodge***, the trial court did not act sua sponte. As discussed above, father first invoked the trial court's jurisdiction on November 7, 2014, when he filed a petition to modify and attached a proposed parenting plan. Mother concedes that father's November 7, 2014 petition fully complied with Tenn. Code Ann. § 36-6-405(a). Mother argues, however, that once the court entered a final judgment modifying the parenting plan, father was required to file a new proposed parenting plan with any subsequent petition to modify.

As we see it, this case turns on the answer to two questions: (1) Was father required to attach a new proposed parenting plan to his January 31, 2017 motion? (2) If father *was* required to attach a new proposed parenting plan, does his failure to do so

- 4 -

mean that his attempt to invoke the court's jurisdiction was ineffective?

The answer to the first question – whether father was required to attach a new proposed parenting plan – largely depends on whether the trial court had previously entered a final judgment in the case. If a final judgment had *not* been entered, then the court's prior orders were subject to revision by the court at any time, whether or not father filed a new proposed parenting plan. *See **Creech v. Addington***, 281 S.W.3d 363, 377 (Tenn. 2009). However, as we emphasized in ***Hodge***, when there *has* been a final judgment in a domestic relations case, it is incumbent on the parties "to awaken the trial court's jurisdiction from this period of rest" by (1) filing a petition to modify and attaching a proposed parenting plan pursuant to Tenn. Code Ann. § 36-6-405(a) or (2) filing a motion pursuant to Tenn. R. Civ. P. 60. 2007 WL 3202769, at *4.

In our view, the trial court's orders entered on December 29, 2015 and August 11, 2016 are both final judgments. Although the December 29, 2015 order stated that the new residential schedule "shall be for a period of one year after which Father can petition the court for further modification," we have previously held that trial courts lack the authority to suspend the finality of their judgments when entering a final decree of divorce or a decree of modification. ***Rigsby v. Rigsby***, No. E2014–02095–COA–R3–CV, 2015 WL 7575075, at *5-6 (Tenn. Ct. App., filed Aug. 27, 2015); ***Gentry v. Gentry***, No. E2013-01038-COA-R9-CV, 2014 WL 2442937, at *3 (Tenn. Ct. App., filed Feb. 5, 2014); ***Davidson v. Davidson***, No. M2009–01990–COA–R3–CV, 2010 WL 4629470, at *4-6 (Tenn. Ct. App., filed Nov. 15, 2010); ***Hoalcraft v. Smithson***, 19 S.W.3d 822, 828 (Tenn. Ct. App. 1999).

In ***Gentry***, the parties' final decree of divorce incorporated a permanent parenting plan but provided that "[t]his matter shall be reviewed in twelve (12) months to determine if it is in the best interest of the minor child for [father] to have additional co-parenting time." 2014 WL 2442937, at *1. A hearing was held a little over one year later. ***Id.*** The court entered a new permanent parenting plan, which also provided that "[t]his matter shall be reviewed in one year." ***Id.*** Father filed a petition to modify the parenting plan. ***Id.*** The court, acting sua sponte, declared that its previous order "was not intended to be a Final Order. ***Id.*** It was intended to be left open. . . . [Therefore,] the Permanent Parenting Plan attached to the [previous] Order . . . should in fact be a Temporary Parenting Plan . . . ." ***Id.*** Mother filed a motion for an interlocutory appeal, which the trial court granted. ***Id.*** at *2.

On appeal, this Court held that the parenting plans included in both the final decree of divorce and the subsequent modification should be treated as *permanent* parenting plans, despite language in the orders to the contrary. ***Id.*** at *2-3. In so holding, we stressed the mandatory language of Tenn. Code Ann. § 36-6-404(a), which provides:

> [a]ny final decree or decree of modification in an action for

> absolute divorce, legal separation, annulment, or separate maintenance involving a minor child *shall incorporate a permanent parenting plan*[.]"

*Id.* at \*2. (quoting Tenn. Code Ann. § 36-6-404(a)) (emphasis in original). The Court also approvingly cited language from ***Davidson v. Davidson***, a case involving similar facts. In ***Davidson***, the trial court entered a final decree of divorce that purported to establish a "temporary" custody arrangement so that the court could "continue to monitor [mother's] progress." 2010 WL 4629470, at \*2. The Court of Appeals held that "[t]he trial court lacked authority to maintain indefinite control over the parenting plan," and vacated the portion of the trial court's order designating the parenting plan as "temporary." *Id.* at \*5-6. The ***Davidson*** Court clarified that "temporary parenting plans are reserved for temporary orders pending the final hearing." *Id.* at \*5.

We find the facts of the present case extremely similar to the facts in ***Gentry***. The trial court attempted to order a temporary parenting plan at the time of the parties' divorce. The court also attempted to make subsequent modification orders temporary in nature by allowing father to seek further modification after a one-year period. In light this Court's prior interpretation of Tenn. Code Ann. § 36-6-404(a), we hold that all of the trial court's orders were final judgments, notwithstanding language in some of those orders to the contrary. After the entry of each final judgment, the court lost the ability to exercise its authority over the case until father "invoked" the court's jurisdiction in one of the two ways discussed above. Father obviously attempted to invoke the court's jurisdiction by filing a motion to modify the parenting plan. We now turn to the second question of whether father's failure to attach a new proposed parenting plan means that his attempt to invoke the court's jurisdiction was ineffective.

This Court recently discussed the consequences of a parent's failure to attach a proposed parenting plan to a petition to modify custody. ***Allen v. Allen***, No. W2017-02332-COA-R3-CV, 2018 WL 4677619 (Tenn. Ct. App., filed July 2, 2018).[4] In ***Allen***, a mother notified her ex-husband "that she intended to relocate to California with the Child. *Id.* at \*1. In response, "[f]ather filed a petition in opposition to relocation and a petition to modify custody." *Id.* Mother, in turn, filed an answer to father's petition as well as a petition requesting injunctive relief allowing her to relocate and seeking a modification of the permanent parenting plan. *Id.* at \*2. Mother did not attach a proposed permanent parenting plan to her petition. *Id.* at \*5. The trial court granted

---

[4] Mother's brief also directs our attention to ***Johnson v. Johnson***, No. E2012-02618-COA-R3-CV, 2013 WL 5373064 (Tenn. Ct. App., filed Sept. 23, 2013). In ***Johnson***, however, the Court did not reach the issue of whether a parent's failure to attach a proposed parenting plan is a jurisdictional defect. Instead, this Court implicitly determined that the issue was moot because "the requirements of Tenn. Code Ann. § 36-6-405 ultimately were satisfied" when mother submitted a proposed permanent parenting plan later in the litigation. *Id.* at \*4.

mother's petition and allowed her to relocate with the child. *Id.* at *4.

On appeal, father argued that the trial court lacked subject matter jurisdiction to consider mother's petition because mother did not attach a proposed permanent parenting plan. *Id.* at *5. This Court rejected father's argument, holding "that Mother's petition was filed pursuant to Tennessee Code Annotated § 36-6-108 [the parental relocation statute], which does not specifically require a parent to file a proposed parenting plan with his or her petition." *Id.* at *7. The Court proceeded to explain that *even if* it was necessary to file a proposed parenting plan with a petition seeking permission to relocate, "the trial court was not required to dismiss Mother's petition based solely on her failure to comply with section 36-6-405(a)." *Id.* The Court justified this conclusion by examining the broader statutory framework governing the use of proposed parenting plans. *Id.* at *8. For example, the Court observed that Tenn. Code Ann. § 36-6-405(a) "does not provide a remedy or sanction for a party who fails to file a proposed parenting plan[.]" *Id.* Another statute provides that if one parent fails to submit a proposed permanent parenting plan, the trial court may adopt the plan filed by the other parent if the court finds that the plan is in the best interest of the child. *Id.* (citing Tenn. Code Ann. § 36-6-404(c)). In addition, the trial court may reject *both* parties' proposed parenting plans and may instead adopt its own parenting plan, if the court finds that another custody arrangement is in the best interest of the child. *Id.* (citing ***Johnson v. Johnson***, No. E2012-02618-COA-R3-CV, 2013 WL 5373064, at *4 (Tenn. Ct. App., filed Sept. 23, 2013)). In light of this broader statutory framework, the Court concluded that

> a party's failure to provide a proposed parenting plan pursuant to Tennessee Code Annotated § 36-6-405 may contribute to the overall success or failure of a petition to modify the permanent parenting plan, *[but] the trial court is not required to dismiss the parent's petition for noncompliance*.

*Id.* (emphasis added).

Although the aforementioned analysis may not have been necessary to the resolution of the issue presented in ***Allen***, "[t]his Court considers such statements to be correct, and adopts them whether dicta or not." ***McPherson v. Thomas***, No. 01-A-019106CR00207, 1992 WL 288886, at *2 (Tenn. Ct. App, filed Oct. 16, 1992). We affirm the ***Allen*** Court's conclusion that a parent's failure to attach a proposed parenting plan "may contribute to the overall success or failure of a petition to modify the permanent parenting plan," but that failure does not deprive the trial court of jurisdiction over the case.

This holding is consistent with our decision in ***Hodge***. Courts may not modify

permanent parenting plans sua sponte; when a final judgment has been entered in a domestic relations case, a parent must invoke the trial court's jurisdiction pursuant to Tenn. Code Ann. § 36-6-405(a) or Tenn. R. Civ. P. 60 in order to modify a permanent parenting plan.  We merely hold that a parent's *partial* noncompliance with Tenn. Code Ann. § 36-6-405(a) – by failing to attach a proposed parenting plan to a petition to modify custody – does not nullify the parent's attempt to invoke the trial court's jurisdiction.[5]

## IV.

The judgment of the trial court is affirmed.  Costs on appeal are assessed to the appellant, Wendy Freeman.  This case is remanded, pursuant to applicable law, for enforcement of the trial court's judgment and collection of costs assessed below.

_____
CHARLES D. SUSANO, JR., JUDGE

---

[5] Given this holding, we reject mother's alternative argument that father's petition to modify was insufficient to invoke the trial court's jurisdiction because father failed to attach a proposed parenting plan that reflected his *new* request to be designated as the primary residential parent.