IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
August 20, 2024 Session

## KARL RAYMOND DUFFY v. JENIFER MICHELE DUFFY

**Appeal from the Circuit Court for Williamson County**
**No. 2019CV-20     Deanna B. Johnson, Judge**

_____

### No. M2023-00747-COA-R3-CV

_____

In its divorce decree, the trial court "adopted" Wife's proposed parenting plans without signing or attaching the plans. More than a year after the resolution of Husband's subsequent motion to alter or amend, the trial court eventually signed the parenting plans pursuant to a motion to enter by Husband. Because we determine that Husband's argument that the trial court's order only became final when the plans were signed is without merit, we conclude that Husband's appeal was untimely. Without a timely filed notice of appeal, this Court lacks jurisdiction, and the appeal is dismissed. Wife is awarded her appellate attorney's fees.

**Tenn. R. App. P. 3 Appeal as of Right; Appeal Dismissed**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which ARNOLD B. GOLDIN, and KENNY ARMSTRONG, JJ., joined.

Christina Hammond Zettersten, Brentwood, Tennessee, for the appellant, Karl Raymond Duffy.

Jessica N. Borne and Aubrey M. Malchow, Franklin, Tennessee, for the appellee, Jenifer Michele Duffy.

## OPINION

### I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff/Appellant Karl Raymond Duffy ("Husband") and Defendant/Appellee Jenifer Michele Duffy ("Wife") were married in June 2000. The parties share two sons,

born in 2003 and 2005.[1]

Husband filed a complaint for divorce in the Williamson County Circuit Court ("the trial court") in January 2019. Wife filed her answer and countercomplaint for divorce in February 2019. Both parties subsequently amended their respective complaints. Prior to trial, both parties submitted income and expense statements, asset and liability statements, and proposed parenting plans.[2]

The matter was heard over four days in April and May 2021. The parties' proposed parenting plans were entered as individual exhibits at trial. The trial court entered its 76-page memorandum and order on August 19, 2021.[3] Therein, the trial court provided a thorough review of the parties' relationship, finances, and parenting dynamics. The order discussed the parties' proposed parenting plans and specifically referenced Mother's plans by exhibit number.

Ultimately, the trial court granted Wife a divorce. The trial court classified, valued, and distributed the parties' marital property. Wife was awarded $188,286.65 of the net marital estate and $66,190.68 of the marital debt; Husband was awarded $105,250.68 of the net marital estate and $108,674.33 of the marital debt. The trial court also awarded Wife a $46,237.67 judgment against Husband.[4] The trial court declined to award attorney's fees to either party.

The trial court determined that Wife would be the primary residential parent for both children. The trial court further found that Wife's proposed parenting plans were in the best interests of the children. Specifically, the trial court stated: "For these reasons, and the numerous facts and factors outlined in the previous section, the Court finds that [Wife's] proposed permanent parenting plans for the children are in the best interests of the children and shall be and are hereby adopted by the Court." The trial court directed Wife's attorney to prepare and file a Child Support Worksheet. In its conclusion, the trial court reiterated: "The Court hereby adopts in full both parenting plans [Wife] filed for trial[.]" Copies of the permanent parenting plans were neither attached to the order nor signed by the trial court judge.

Wife filed the Child Support Worksheet on August 31, 2021, and subsequently filed a motion for entry of an order setting child support on September 8, 2021.

---

[1] The children reached maturity in 2021 and 2023, and the actual care and custody of the children is not at issue in this appeal.

[2] Husband filed one proposed plan for both children. Based on the age of the children and their respective relationships with Husband, Wife submitted a separate proposed parenting plan for each child.

[3] The attached certificate of service reflects an August 26, 2021 mailing date.

[4] The trial court later clarified that $41,856.49 of this judgment was already reflected in Wife's total award from the proceeds of the sale of the marital residence.

Husband then filed a motion to alter or amend the judgment on September 14, 2021. Therein, Husband argued, inter alia, that several of the trial court's findings regarding his finances and the value of certain assets were inaccurate, leading to an inequitable division of the marital estate.

In its November 10, 2021 order addressing both motions, the trial court stated that it would "amend its Memorandum and Order only to the extent that is necessary to resolve a conflict in exhibits." The trial court clarified multiple aspects of its memorandum and order, which primarily included expressly stating that its conclusions were based on its credibility determinations. Several of Husband's arguments were found to be without merit. The trial court then set the amount of Husband's child support obligation. The trial court again averred that "[i]n its *Memorandum and Order* entered on August 19, 2021, the Court adopted the [Wife's] proposed Permanent Parenting Plans for both children in their entirety." Thus, to calculate Husband's child support arrearage, the trial court used the date Husband's child support obligation was to begin as set out in the plans. The trial court awarded Wife partial attorney's fees associated with Husband's motion and all of her attorney's fees related to her own motion.

The trial court entered an order on December 13, 2021, correcting a numerical error in its November order.

Husband's current counsel filed a notice of appearance on May 6, 2022. Husband then filed a "Motion to Enter Parenting Plan" on May 12, 2022. Therein, Husband argued:

2. That pursuant to said Memorandum and Order, this Court found that [Wife's] Proposed Parenting Plans (one for each child) were in the best interests of the children and were adopted by the Court;
3. That although the Court purported to adopt [Wife's] proposed plans, no plan was ever signed or filed in this matter;
4. That pursuant to the Memorandum and Order, [Wife's] attorney was directed to file a child support worksheet by August 31, 2021, consistent with the findings of the Memorandum;
5. That said worksheet was filed on August 31, 2021, however, no actual order of child support was ever entered, nor was a Parenting Plan including child support entered[.]

Husband requested that the trial court enter a permanent parenting plan and child support order. Husband attached a new parenting plan consolidating the arrangements set out in both of Wife's proposed plans and including the child support amount set by the trial court in its November 2021 order.

The trial court entered signed parenting plans for both children on April 27, 2023. The plans included the original arrangements set out in Wife's proposed parenting plans.

Husband filed his notice of appeal on May 16, 2023.

## II. ISSUES PRESENTED

Husband raises two main issues in his appellate brief: (1) "Whether the trial court abused its discretion in making an inequitable division of the marital assets?";[5] and (2) "Whether Husband should be awarded his attorney's fees?"

In the posture of appellee, Wife denies that the trial court erred in its division of the marital estate and further asks (1) if this appeal is time-barred; and (2) which party is entitled to attorney's fees.

## III. ANALYSIS

### A.

Before considering Husband's issues regarding the trial court's distribution of assets, we must first address Wife's argument that this appeal is untimely. Rule 4 of the Tennessee Rules of Appellate Procedure provides the time limit for filing a notice of appeal to this Court:

> In an appeal as of right to the Supreme Court, Court of Appeals or Court of Criminal Appeals, the notice of appeal required by Rule 3 shall be filed with the clerk of the appellate court within 30 days after the date of entry of the judgment appealed from[.]

Tenn. R. App. P. 4(a). The thirty-day time limit for filing a notice of appeal set forth in Rule 4 is mandatory and jurisdictional in civil matters. *Albert v. Frye*, 145 S.W.3d 526, 528 (Tenn. 2004); *Binkley v. Medling*, 117 S.W.3d 252, 255 (Tenn. 2003). As a result, it cannot be waived or extended. *See* Tenn. R. App. P. 2 & 21(b).

However, the time for filing a notice of appeal may be tolled by the timely filing of certain motions. *See generally* Tenn. R. Civ. P. 59.01 (stating that only motions pursuant to Rules 50.02 (for judgment in accordance with a directed verdict), 52.02 (to amend or make additional findings of fact), 59.07 (for a new trial), and 59.04 (to alter or amend the judgment) will "extend[] the time for taking steps in the regular appellate process"). In the event that a motion under Rule 50.02, 52.02, 59.07, or 59.04 is timely filed, "the time for appeal for all parties shall run from the entry of the order denying a new trial or granting or denying any other such motion." Tenn. R. App. P. 4(b).

---

[5] Husband breaks this question into six sub-issues addressing particular assets and awards.

Here, the trial court entered its memorandum and order on August 19, 2021, and the certificate of service reflected a mailing date of August 26, 2021. *See generally* Tenn. R. Civ. P. 58. Husband then filed a timely motion to alter or amend under Rules 52.02 and 59.04 on September 14, 2021. Husband's motion was ultimately resolved in full, at the latest, by the trial court's December 13, 2021 order correcting a mathematical error. Wife argues that Husband's May 15, 2023 notice of appeal was filed significantly more than thirty days after the entry of the order adjudicating Husband's post-judgment motion, and was therefore untimely.

Husband asserts, however, that the December 13, 2021 order was non-final and so did not trigger the thirty-day window for filing a notice of appeal. Husband is correct that this Court's jurisdiction in appeals as of right extends only to final judgments. Tenn. R. App. P. 3(a). *But cf.* Tenn. R. App. 9 (governing discretionary interlocutory appeals for which no final judgment is necessary); Tenn. R. App. 10 (discussing discretionary extraordinary appeals for which no final judgment is necessary). A final judgment for purposes of Rule 3 is one that "decides and disposes of the whole merits of the case leaving nothing for the further judgment of the court." **Richardson v. Tenn. Bd. of Dentistry**, 913 S.W.2d 446, 460 (Tenn. 1995) (quoting **Saunders v. Metro. Gov't of Nashville & Davidson Cnty.**, 214 Tenn. 703, 383 S.W.2d 28, 31 (Tenn. 1964)); *see also* **Mengle Box Co. v. Lauderdale Cty.**, 144 Tenn. 266, 230 S.W. 963, 966 (1921) ("If the entire merits are disposed of, the decree is final; otherwise not.").

In arguing that his notice of appeal was timely, Husband asserts that no final order existed in this case until the parenting plans were signed by the trial court. The crux of Husband's argument is the requirement in Tennessee Code Annotated section 36-6-404(a) that "[a]ny final decree or decree of modification in an action for absolute divorce . . . shall incorporate a permanent parenting plan[.]" While Husband acknowledges the trial court's repeated statements that it *adopted* Wife's proposed parenting plans, he argues that the trial court's failure to physically attach a signed copy of the permanent parenting plans or otherwise expressly *incorporate* the plans into its ruling left its earlier order non-final. In Husband's opinion, only the April 27, 2023 signing of the parenting plans rendered the trial court's order final, such that his May 15, 2023 notice of appeal was timely.

In our view, Husband offers a three-prong attack against the finality of the trial court's August 2021 memorandum and order: that the plans were not signed, that the plans were not expressly described as incorporated into the trial court's ruling, and that the plans were not attached to the trial court's order. Respectfully, these arguments are without merit.

First, we are aware of no requirement that courts sign the parenting plans they adopt. As previously discussed, Tennessee Code Annotated section 36-6-404(a) merely states that an order pertaining to the parenting time of a child "shall *incorporate* a permanent parenting plan[.]" (Emphasis added). Nothing in section 36-6-406(a) or any other statute cited by Husband requires a signed parenting plan for purposes of finality. At oral

argument, however, Husband posited that *In re C.R.D.* stands as a condemnation on unsigned parenting plans. No. M2005-02376-COA-R3-JV, 2007 WL 2491821 (Tenn. Ct. App. Sept. 4, 2007). In that case, the parties could not agree on the language to be included in an order addressing the father's motion to modify an existing parenting plan. *Id.* at *2. The mother filed a proposed parenting plan; the father filed both a proposed plan and a proposed order adopting said plan. *Id.* The juvenile court then signed the father's proposed order but did not sign the attached plan. *Id.* The father subsequently filed a motion to alter or amend this order. *Id.* Several months later, sua sponte and without explanation, the juvenile court signed the mother's proposed plan. *Id.* at *3. Eventually, however, the juvenile court referred back to the parties' initial parenting plan in rendering its judgment on the motion to modify. *Id.* at *5.

On appeal, this Court expressed its concern with "the juvenile court's apparent nonchalance about the signature and entry of its orders[,]" noting that "care should be taken to ensure that the orders entered in juvenile court accurately reflect the court's ruling and decisions with regard to the matters actually presented." *Id.* at *4. In describing the confusion created by the juvenile court's lackadaisical manner of entering orders, the Court stated that "[b]oth parties apparently believed that the [order adopting the father's attached but unsigned proposed parenting plan] was the final order." *Id.* According to Husband, "it's very clear that the Court did not think it was a final order."

However, the *In re C.R.D.* Court specifically acknowledged that the father's Rule 59.04 motion to alter or amend the order approving his proposed parenting plan was timely. *Id.* at *5; *see Harris v. Chern*, 33 S.W.3d 741, 744 (Tenn. 2000) (explaining that "Rule 59.04 addresses final judgments and requires a motion to alter or amend to be made within 30 days of the entry of judgment"). No other discussion of finality or jurisdiction appears in the opinion. Further, the effect of either parenting plan proposed by the parties was rendered irrelevant to the issues before the appellate court based on the juvenile court's ultimate reliance on a wholly separate parenting plan. *See Staats v. McKinnon*, 206 S.W.3d 532, 550 n.41 (Tenn. Ct. App. 2006) ("It is axiomatic that judicial decisions do not stand for propositions that were neither raised by the parties nor actually addressed by the court." (citations omitted)). So while we certainly took issue with the juvenile court's haphazard approach to entering orders, the case simply cannot be read to hold that without a signed parenting plan, no order in a custody or visitation case may be considered a final adjudication of the issues therein. Rather, our true issue with the juvenile court's methods in *In re C.R.D.* appears to be that competing orders were entered without explanation, leading to considerable confusion.

No such confusion exists here. From our review of the record, it appears that only one set of parenting plans was proposed by Wife during the pendency of the trial court proceedings; certainly, only one set of plans were entered as exhibits by Wife at trial. The trial court clearly and unequivocally adopted these parenting plans in its August 19, 2021 memorandum and order, including specific references to the exhibits. This adoption, and

- 6 -

the ongoing effectiveness of the plans, was reiterated without contention at the hearing on Husband's motion to alter or amend. So too did Husband's counsel acknowledge at oral argument that "[i]t took a year to get those parenting plans entered when they were already clearly ordered." The trial court not signing the plans it adopted cannot be seen as engendering the same chaos as that in *In re C.R.D.*

Even if we were to agree with Husband's interpretation of that case, such a restrictive requirement would directly conflict with the dictates of the form Parenting Plan Order promulgated by the administrative office of the courts pursuant to statutory mandate.[6] Indeed, the form Parenting Plan Order specifically notes above the signature line for the Judge or Chancellor that "[t]he judge or chancellor may sign below *or, instead*, sign a Final Decree or a separate Order incorporating this plan."[7] (Emphasis added).

In an apparent attempt to avoid the plain meaning of the form language, Husband points again to the mandate that the parenting plan be "incorporate[ed.]" According to Husband, this requirement was not satisfied by the trial court's use of the word "adopted" in its order. This argument of semantics is utterly unconvincing. Tennessee courts have consistently used both words to describe the ordering of parenting plans in this context. *See, e.g.*, *Armbrister v. Armbrister*, 414 S.W.3d 685 (Tenn. 2013); *Freeman v. Freeman*, 579 S.W.3d 1 (Tenn. Ct. App. 2018); *Stricklin v. Stricklin*, 490 S.W.3d 8 (Tenn. Ct. App. 2015); *Rountree v. Rountree*, 369 S.W.3d 122 (Tenn. Ct. App. 2012); *Davidson v. Davidson*, No. M2009-01990-COA-R3-CV, 2010 WL 4629470, at *4 (Tenn. Ct. App. Nov. 15, 2010); *Massey-Holt v. Holt*, 255 S.W.3d 603, 612 (Tenn. Ct. App. 2007). Notably, after requiring that a trial court incorporate a parenting plan into its divorce decree, the child custody statute provides alternative methods for the trial court to "approve a permanent parenting plan[.]" Tenn. Code Ann. § 36-6-404(c); *see also* Tenn. Code Ann. § 36-6-404(d) (directing that the parenting plan form created by the administrative office of the court "shall be used consistently by each court within the state that approves parenting plans"). We decline to insert a hyper-technical, prescriptivist requirement into a statute where none exists.

A similar conclusion was reached in *Brewer v. Brewer*, 869 S.W.2d 928 (Tenn. Ct. App. 1993). There, the initial question on appeal was whether the provisions of the parties' property settlement agreement were incorporated into the trial court's divorce decree. *Id.*

---

[6] Tennessee Code Annotated section 36-6-404(d) directs that the administrative office of the courts "shall develop a 'parenting plan' form that shall be used consistently by each court within the state that approves parenting plans pursuant to § 36-6-403 or this section on and after July 1, 2005." (footnote omitted). Section 36-6-406(g) also requires that "[f]orms used by parties as parenting plans or adopted by the court for their use shall conform to all substantive language requirements established by the administrative office of the courts at such time as parenting plan forms are promulgated and approved by that office."

[7] *See* Admin. Off. of the Cts., *Permanent Parenting Plan Form* 9 (2021), https://www.tncourts.gov/sites/default/files/docs/final_parenting_plan_-_2021.01.04.pdf.

at 931. As to the agreement, the trial court decreed that "the property settlement agreement . . . is hereby approved except for those portions of said agreement which relate to [the husband's] financial responsibilities to the children of the parties after they reach the age of majority, said provisions being neither approved nor disapproved[.]" *Id.* at 929. The decree then listed seven of "the major portions of said property settlement agreement[,]" including one related to the effect of the children reaching majority on the husband's financial obligations. *Id.* at 929–30. As to those provisions specifically discussed in the decree, this Court held that:

> Upon review of the record, we determine that the final decree of divorce explicitly 'approved' portions of the parties' Agreement, specifically incorporated 'major portions' and failed to expressly incorporate by reference all remaining provisions. The rights and liabilities of the parties are clearly set forth in the provisions specifically included; thus, we find that these were incorporated and merged into the decree.

*Id.* at 932. Those provisions that were not referred to in the decree and those provisions that were neither approved nor disapproved were determined to not have been incorporated into the trial court's decree. *Id.* Thus, the trial court's failure to explicitly deem certain provisions "incorporated" was not dispositive of the application of those provisions. Like there, the trial court in the instant case was explicit in its adoption of Wife's parenting plans in full. That the trial court did not use the precise language included in the statute is of no consequence in the face of this clarity.

We also decline to establish a blanket requirement that for an order to effectively incorporate a document, said document must be directly attached to the order. Such a definite stipulation is simply not contemplated by the word "incorporate." *See Incorporate*, *Black's Law Dictionary* (12th ed. 2024) (defining the verb "incorporate" as, inter alia, "2. To combine with something else <incorporate the exhibits into the agreement>. 3. To make the terms of another (esp. earlier) document part of a document *by specific reference* <the codicil incorporated the terms of the will>" (emphasis added)); *Incorporation by reference*, *Black's Law Dictionary* (12th ed. 2024) (defining "incorporation by reference" as, inter alia, "1. A method of making a secondary document part of a primary document by including in the primary document a statement that the secondary document should be treated as if it were contained within the primary one. . . Often shortened to *incorporation*. – Also termed *adoption by reference*."). While in some cases the better practice may be to attach the incorporated document for the sake of clarity, e.g., where there could be some misunderstanding about which specific version of a document was being referenced, in this case no such misunderstanding is conceivable.

Again, there is and was no confusion in this case about which parenting plans the

trial court adopted or where to find the plans in the record.[8] Husband answered affirmatively when asked by the trial court at the hearing on his motion to alter or amend whether he had "copies of the parenting plans which the court has now accepted[.]" And despite Husband's claim at oral argument that his request for a signed copy of the parenting plans was denied at that hearing, the trial court's repeated statements that the plans had been in effect since its August 19, 2021 order were not contested by Husband.[9] That all parties knew which plans were included as part of the trial court's memorandum and order is manifest.[10]

Moreover, the entire merits of the case were decided, at the latest, with the filing of the trial court's December 13, 2021 order. The trial court granted a divorce, distributed the marital estate, and established the parenting schedule and child support obligation for the children. And here, the trial court expressly stated that Wife's proposed parenting plans were adopted in full. Unlike in *Brewer*, no provisions were excluded from the trial court's adoption of the plans, nor were any provisions neither approved nor disapproved. As such, the referenced parenting plans set forth "the rights and liabilities of the parties" in relation to the parenting of the parties' children clearly and completely. *Brewer*, 869 S.W.2d at 932; *see also* *Richardson*, 913 S.W.2d at 460; *Mengle Box Co.*, 144 Tenn. 266, 230 S.W. at 966.

In summary, the trial court effectively incorporated the terms of Wife's proposed parenting plans into its August 19, 2021 memorandum and order. Accordingly, nothing was left for future determination at the time the trial court entered its December 13, 2021 corrective order, and the thirty-day period for filing a notice of appeal of the trial court's substantive rulings began to run. Husband's notice of appeal, filed on May 15, 2023, was therefore untimely. Consequently, this Court lacks subject matter jurisdiction over this appeal, and the appeal must be dismissed.

**B.**

Both parties have requested their appellate attorney's fees. This Court has the discretion to award attorney's fees to a party faced with a frivolous appeal:

When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon

---

[8] Wife's proposed parenting plans were included in her pre-trial filings on April 23, 2021, and were entered as exhibits 34 and 35 at trial.

[9] We note that Husband's counsel at oral argument did not represent Husband at the hearing on his motion to alter or amend.

[10] Husband stated at oral argument that the younger child's school refused to release the child into his custody pursuant to the terms of the parenting plan because the plan were not signed. No proof of this event appears in the record, and Husband has not requested that this Court consider post-judgment facts. *See* generally Tenn. R. App. P. 14(a) (concerning post-judgment facts).

- 9 -

motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

Tenn. Code Ann. § 27-1-122. "An appeal is deemed frivolous if it is devoid of merit or if it has no reasonable chance of success." *GSB Contractors, Inc. v. Hess*, 179 S.W.3d 535, 547 (Tenn. Ct. App. 2005) (quoting *Wakefield v. Longmire*, 54 S.W.3d 300, 304 (Tenn. Ct. App. 2001)).

We note that while Husband argued the need for signed parenting plans in the trial court, and obviously relied on the purported significance of the signed plans in filing his notice of appeal, Husband failed to offer any such argument in his appellate brief. And although Wife argued in her appellate brief that this reliance was misplaced and the appeal was time-barred, Husband did not address the issue in a reply brief. Instead, Husband's appellate brief focused solely on issues related to the distribution of the marital estate, raising many of the same arguments contained in his motion to alter or amend.

Clearly, the issues Husband attempts to raise on appeal are wholly unrelated to the adoption of the parenting plans. Indeed, the parties' older son had reached the age of maturity and the parties' younger son was almost seventeen at the time Husband filed his motion to enter the parenting plans. The motion was simply a last-minute, hail-Mary effort by Husband to get a second bite of the apple and re-litigate the trial court's distribution of marital assets after his motion to alter or amend was not successful. Rather than serving any substantive appellate purpose, Husband's focus on the minutia of the trial court's August 19, 2021 order is an obvious attempt to avoid the implications of the thirty-day period for filing an appeal under Rule 4 of the Tennessee Rules of Appellate Procedure.

Wife is accordingly awarded her appellate attorney's fees for this frivolous appeal.

## IV. CONCLUSION

This appeal is dismissed for failure to file a timely notice of appeal. The matter is remanded to the trial court for a determination of Appellee Jenifer Duffy's appellate attorney's fees. Costs of this appeal are taxed to Appellant Karl Raymond Duffy, for which execution may issue if necessary.

s/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE

- 10 -