

# Missouri Court of Appeals
## Southern District

### En Banc

MARK WALTON,                              )
                                          )
      Appellant,                    )
                                          )
v.                                        )      No. SD38504
                                          )
TREASURER OF MISSOURI                     )      Filed: **March 20, 2025**
AS CUSTODIAN OF                           )
SECOND INJURY FUND,                       )
                                          )
      Respondent.                   )

### APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS COMMISSION

### **AFFIRMED**

Mark Walton ("Appellant") appeals the Labor and Industrial Relations Commission's ("Commission") decision denying his claim against the Treasurer of Missouri as Custodian of the Second Injury Fund ("Fund"). The Commission denied Appellant permanent and total disability ("PTD") benefits because he failed to prove that his preexisting left-shoulder injury met the fifty-week permanent partial disability ("PPD") threshold as required under §287.220.3.[1]

On appeal, Appellant argues that a portion of a prior enhanced PPD award can be used to add additional weeks of compensation to an otherwise non-qualifying injury to determine

---

[1] Unless otherwise indicated, all statutory references are to RSMo 2016, as amended through July 17, 2017, the date of the alleged incident.

1

whether such injury meets the fifty-week threshold. Because we hold that §287.220.3 does not permit a prior enhanced PPD award to be used to add additional weeks of compensation to an otherwise non-qualifying injury, Appellant's point is denied and the Commission's decision is affirmed.

**Facts and Procedural History**

I.      *The Missouri Workers' Compensation Act and the 2013 Amendment*

In 1925, the Missouri Workers' Compensation Act ("Act") was enacted to provide compensation to employees for on-the-job injuries resulting in measurable disabilities to identifiable body parts or to the body as a whole ("BAW"). *See **Gunnett v. Girardier Bldg. & Realty Co.***, 70 S.W.3d 632, 635 n.2 (Mo. App. E.D. 2002). Under the Act, employers are liable for disabilities resulting from compensable work-related injuries. ***Searcy v. McDonnell Douglas Aircraft Co.***, 894 S.W.2d 173, 178 (Mo. App. E.D. 1995) (*overruled* on other grounds by *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220 (Mo. banc 2003)).

In 1943, the Fund was established to encourage the employment of workers with one or more previous work-related disabilities. The Fund limits employer liability to the *last* injury— and not to the previous work-related injury—and pays benefits if a combination of partial disabilities results in PTD. ***Treasurer of State v. Parker***, 622 S.W.3d 178, 181 (Mo. banc 2021). Under the Fund's framework, therefore, the employer at the time of the *last* injury is liable only for compensation due from *that* injury, and the Fund "is liable only for the percentage of disability which exceeds the sum of the two disabilities by reason of their combination." ***Searcy***, 894 S.W.2d at 178.

In 2013, the Fund became insolvent, and the legislature amended §287.220 to limit the Fund's liability. ***Parker****,* 622 S.W.3d at 181 (citing ***Cosby v. Treasurer of State***, 579 S.W.3d

2

202, 205 (Mo. banc 2019)). Prior to the amendment, claimants could seek both PPD and PTD benefits from the Fund. *Id.* Following the amendment, however, subsections 2 and 3 were added ("Subsection 2" and "Subsection 3"). *Id.*; *See* §287.220.2 and §287.220.3.

Subsection 2, which applies to compensable injuries occurring *before* January 1, 2014, retained the Act's pre-amendment framework. *Id.* To resolve the Fund's insolvency, however, Subsection 3, which applies to compensable injuries occurring *after* January 1, 2014, eliminated all PPD claims against the Fund and limited the Fund's liability for PTD claims by requiring that claimants meet two conditions. *Id.*

To qualify for PTD benefits against the Fund under Subsection 3, the claimant must first show a "medically documented preexisting disability equaling a minimum of fifty weeks of [PPD] compensation" that meets one of four criteria listed in Subsection 3(2)(a)(i-iv).[2] Second, the claimant must sustain a "subsequent compensable work-related injury that, when combined with the preexisting disability, [results in PTD]."[3] The "subsequent compensable work-related injury" is often referred to as the "primary injury."

---

[2] §287.220.3(2)(a)(i-iv) provides:

> An employee has a medically documented preexisting disability equaling a minimum of fifty weeks of permanent partial disability compensation . . . which is:
>
> (i) A direct result of active military duty in any branch of the United States Armed Forces; or
>
> (ii) A direct result of a compensable injury as defined in section 287.020; or
>
> (iii) Not a compensable injury, but such preexisting disability directly and significantly aggravates or accelerates the subsequent work-related injury and shall not include unrelated preexisting injuries or conditions that do not aggravate or accelerate the subsequent work-related injury; or
>
> (iv) A preexisting permanent partial disability of an extremity, loss of eyesight in one eye, or loss of hearing in one ear, when there is a subsequent compensable work-related injury as set forth in subparagraph b of the opposite extremity, loss of eyesight in the other eye, or loss of hearing in the other ear.

[3] §287.220.3(2)(b) provides, in relevant part: "Such employee thereafter sustains a subsequent compensable work-related injury that, when combined with the preexisting disability, as set forth in items (i), (ii), (iii), or (iv) of subparagraph a. of this paragraph, results in a permanent total disability as defined under this chapter[.]"

## II. Factual Background

### a. First Preexisting Injury: The 1992 Left Shoulder Injury

Appellant sustained three work-related injuries during his career as a diesel mechanic. The first injury occurred in 1992 when Appellant injured his left shoulder while rebuilding a transmission, resulting in 20 % PPD to the left shoulder (46.4 weeks) paid by his employer ("1992 Left Shoulder Injury").

### b. Second Preexisting Injury: The 2005 Lower Back Injury

The second injury occurred in 2005 when Appellant slipped on oil and injured his lower back ("2005 Lower Back Injury"). His employer paid PPD of 30% BAW (120 weeks). Additionally, in a settlement on June 19, 2008 ("Fund Settlement"), the Fund paid 16.64 weeks of enhanced PPD ("Enhanced PPD").[4] "Enhanced PPD . . . 'is a special or additional allowance for cumulative disabilities resulting from [multiple] injuries.'" *Ryan v. Second Injury Fund*, No. E.D. 112149, 2024 WL 4886488, at *7 (Mo. App. E.D. Nov. 26, 2024) (quoting *Kolar v. First Student, Inc.*, 470 S.W.3d 770, 776 (Mo. App. E.D. 2015)).

In the Fund Settlement, Appellant agreed that the 1992 Left Shoulder Injury was worth 46.4 weeks; the 2005 Lower Back Injury was worth 120 weeks; and the "synergistic effect" of these combined injuries (166.4 weeks) was 10%, equaling 16.64 weeks. The Enhanced PPD award was based on Dr. Koprivica's medical opinion, stating, "Considering the impact of this combination, it is my opinion that the synergism is fairly represented by a ten (10) percent enhancement factor. This represents 16.64 weeks of disability for . . . Fund liability purposes." Although the parties dispute whether the Enhanced PPD was "apportioned" between Appellant's

---

[4] "Enhanced PPD," "enhancement," "loading factor" and "multiplicity factor" are terms that have been used interchangeably.

4

left shoulder and lower back, this total—16.64 weeks—was calculated by using a 10% enhancement of the left shoulder (4.64 weeks) and a 10% enhancement of the lower back (12 weeks) injuries.

### c. The Primary Injury

The primary injury occurred on July 17, 2017, when Appellant fell out of a truck sitting on a flatbed trailer ("Primary Injury"). Appellant was knocked unconscious, suffered a concussion, and was diagnosed with a scalp laceration, right shoulder strain, chronic right-sided lower back pain, and right-sided sciatica. Appellant was later diagnosed with right cervical radiculopathy, impingement syndrome, various injuries to his biceps, and neurocognitive disorder due to the concussion he sustained from the fall.

### d. Procedural History

Appellant pursued a hearing against his employer, The Larson Group Inc. ("Larson"), and the Fund. At the hearing, Appellant introduced expert reports from Dr. Koprivica and Dr. Mullins.

Dr. Koprivica assigned 20% PPD to the left shoulder (46.4 weeks). Referencing Dr. Koprivica's rating, Dr. Mullins found PTD resulting from the combination of the 1992 Left Shoulder, 2005 Lower Back, and Primary Injuries. Specifically, Dr. Mullins found a "synergism" existed from the combination of the Primary Injury, which injured the right shoulder, and the pre-existing 1992 Left Shoulder Injury, because both shoulders were injured and unable to compensate for each other. While Dr. Mullins did not expressly assign "51.04 weeks" to the left shoulder in his report, Appellant argued that this total, represented by the 1992 Left Shoulder Injury (46.4 weeks) and a portion of the Enhanced PPD representing the left shoulder (4.64 weeks), was the basis for Dr. Mullin's PTD determination.

5

Larson offered an expert report from Dr. Lennard, who found that Appellant had full range of motion in his left shoulder without pain, no palpable tenderness, and no instability. At the hearing, when asked, "Is it just your right arm or is it both arms you have problems with?" Appellant stated, "No. Just primarily the right." When asked, "So in 2017, were you having problems with that left shoulder?" Appellant stated, "No." When asked, "Did you have problems [lifting heavy objects, [r]ang[ing] anywhere from 60 to 2-, 300 pounds] prior to 2017?" Appellant stated, "No."

Larson settled with Appellant, paying 20% PPD to the right shoulder (46.4 weeks), 15% BAW at the head, and 10% BAW at the hip and lower back (totaling 146.4 weeks). On September 15, 2022, the Administrative Law Judge ("ALJ") issued an award finding that Appellant failed to prove that he was entitled to PTD benefits. Specifically, the ALJ found that the left shoulder disability was 46.4 weeks—3.6 weeks short of the fifty-week threshold required under Subsection 3. Appellant then appealed the award to the Commission, arguing the ALJ erred by ignoring the Enhanced PPD paid by the Fund.

The Commission found that the award was supported by competent and substantial evidence, including Appellant's own testimony that he did not have difficulty with his left shoulder prior to the Primary Injury, Dr. Koprivica's rating of 46.4 weeks PPD to the left shoulder, Dr. Mullin's reliance on said rating, and Dr. Lennard's findings regarding the left shoulder.

This appeal followed.

## Standard of Review

Our review of the Commission's decision is governed by article V, section 18, of the Missouri Constitution and §287.495, providing for judicial review of the Commission's award to

6

determine whether the decision is authorized by law and whether it is "supported by competent and substantial evidence upon the whole record." Under §287.495, we must affirm unless:

> (1) the Commission acted without or in excess of its powers; (2) the award was procured by fraud; (3) the facts found by the Commission do not support the award; or (4) there was not sufficient competent evidence in the record to warrant the making of the award.

In reviewing the Commission's decision, "we must consider the whole record to determine whether it contains sufficient competent and substantial evidence to support the award, and we will set aside the Commission's award only if it is contrary to the overwhelming weight of the evidence." *Maness v. City of De Soto*, 421 S.W.3d 532, 536–37 (Mo. App. E.D. 2014) (citation omitted). "We defer to the Commission on issues of fact, credibility of witnesses, and weight to be given conflicting evidence." *Id.* at 537 (citing *Hager v. Syberg's Westport*, 304 S.W.3d 771, 773 (Mo. App. E.D. 2010)).

However, "we review *de novo* the Commission's interpretation of the workers' compensation statute and its application of the law without deference to the Commission's findings." *Marberry v. Treasurer of Mo.*, 635 S.W.3d 586, 590 (Mo. App. E.D. 2021) (citation omitted). We are required to construe the workers' compensation statute strictly. §287.880. "When interpreting statutes, this Court must ascertain the intent of the legislature by considering the plain and ordinary meaning of the terms and give effect to that intent if possible." *Cosby*, 579 S.W.3d at 206 (alteration and quotation marks omitted). "Strict construction does not authorize . . . this court to add words to or subtract words from a statute or ignore the plain meaning of the words chosen by the legislature." *Naeter v. Treasurer of Mo.*, 576 S.W.3d 233, 237 (Mo. App. E.D. 2019) (citation omitted). "[C]onsistent with precedent that employees in workers' compensation cases have both the burdens of persuasion and production . . . *Parker*

7

highlights the burden is on the employee to demonstrate that his preexisting disabilities qualify under [Subsection 3].” ***Adams v. Treasurer of State***, 662 S.W.3d 8, 13 (Mo. App. W.D. 2022).

**Analysis**

In his sole point on appeal, Appellant contends the Commission erred in denying him PTD benefits by finding that the 1992 Left Shoulder Injury was not a qualifying injury under Subsection 3 because it was considered in isolation from some portion of the Enhanced PPD award from the previous Fund Settlement.[5]

Several Missouri courts have recently ruled on the application and analysis of claims under Subsection 3. *See* ***Parker****,* 622 S.W.3d at 181 (holding that an “employee satisfies the second condition by showing the primary injury results in PTD when combined with ***all*** preexisting disabilities ***that qualify*** under one of the four eligibility criteria listed in the first condition”) (emphasis in the original); ***Klecka v. Treasurer of Mo.***, 644 S.W.3d 562, 567 (Mo. banc 2022) (holding that the appellant’s experts’ opinions that the appellant was PTD were not sufficient because their opinions considered non-qualifying preexisting disabilities in their PTD analysis); and ***Phelps v. Mo. State Treasurer***, 629 S.W.3d 47, 58 (Mo. App. S.D. 2021) (holding that the Commission did not err in finding that the appellant’s two preexisting disabilities were non-qualifying because each did not equal fifty weeks of PPD). Broadly, these opinions make

---

[5] The Commission argues that Appellant’s argument misconstrues the standard of review, and that because the Commission made a factual determination based on the record that Appellant’s left shoulder injury only constituted 46.4 weeks of PPD that such finding is binding on appeal. We do not read the conflict in this case as a factual dispute. It is the interplay between the previous award and the current one, both of which we are required to give deference to, which creates the legal issue in this case. While we defer to the Commission on issues of fact, “we review *de novo* the Commission’s interpretation of the workers’ compensation statute and its application of the law without deference to the Commission’s findings.” ***Marberry***, 635 S.W.3d at 590 (citing ***Thompson v. Treasurer***, 545 S.W.3d 890, 893 (Mo. App. E.D. 2018)). Thus, we proceed to analyze the legal question of whether a prior award of enhanced PPD can be used to add additional disability time to a disability that does not otherwise meet the fifty-week threshold under the current version of §227.220.3.

clear that any disability that does not reach the required fifty-week threshold under Subsection 3 may not be considered in the determination of PTD.

While these holdings form the foundation for an analysis of Subsection 3, they are neither cited nor discussed in Appellant's brief. While Subsection 3 has been discussed at length in previous cases, it does not appear that, until recently, the specific question raised by Appellant in this case had been addressed.

While this matter was on appeal, the Eastern District issued its decision in *Ryan*, 2024 WL 4886488. In *Ryan*, the claimant sustained preexisting injuries in 2004 and 2011. *Id.* at *2-3. Regarding the 2011 injury, the claimant's employer paid PPD to the right shoulder (46.4 weeks), and the Fund paid an award of enhanced PPD that included the injury to the right shoulder. *Id.* The claimant subsequently injured his right shoulder and cervical spine in 2015. *Id.* In determining whether the claimant's right-shoulder disability met the fifty-week threshold under Subsection 3, the ALJ added a portion of the enhanced PPD award (6.98 weeks) to the employer-paid PPD (46.4 weeks), and found that the preexisting disability met the fifty-week threshold under Subsection 3. *Id.* at *4. The Commission reversed the ALJ's award, finding that the enhanced PPD award was not a direct result of the 2011 right-shoulder injury and, therefore, the right shoulder injury was non-qualifying. *Id.* at *5.

The Eastern District found that *Parker* and *Klecka* were not instructive on the relevant issue and, despite noting that the 2013 amendments to §287.220 were meant to limit Fund liability and that such section was to be strictly construed, held as a matter of first impression that a portion of a prior enhanced PPD award involving the same disability could be considered in determining whether a claimant has met the fifty-week statutory threshold under Subsection 3. *Ryan*, 2024 WL 4886488, at *6.

9

We disagree with the majority's holding in **Ryan**. Under the plain language of Subsection 3, Appellant is entitled to an award of PTD from the Fund only if he has "a medically documented preexisting disability equaling a minimum of fifty weeks [PPD]." As the dissent in **Ryan** points out, the legislature specifically directed a departure from earlier precedents that allowed a consideration of *all* preexisting disabilities in a PTD determination. *Id.* at *11 (Torbitzky, J., dissenting) (citing **Adams**, 662 S.W.3d at 15). "When there are multiple disabilities in a compensation award, *each* preexisting disability must be evaluated *individually* to determine whether it satisfies [Subsection 3] to be considered a qualifying preexisting disability[,]" *McCoy v. Meridian Med. Tech.*, 675 S.W.3d 740, 743 (Mo. App. E.D. 2023) (emphasis added) (citing **Parker**, 622 S.W.3d at 182 and **Adams**, 662 S.W.3d at 21), and **Parker** and **Klecka** make clear that non-qualifying disabilities cannot be considered in a PTD determination. **Parker,** 622 S.W.3d at 181; **Klecka,** 644 S.W.3d at 566-67.

In this case, three medical experts provided evidence in accordance with the current "medical standards" used in determining PPD compensation, and none of them concluded that Appellant's 1992 Left Shoulder Injury, which is a disability distinct from the award of Enhanced PPD, met the fifty-week threshold required under Subsection 3. While Dr. Mullins opined that Appellant qualified for an award of PTD, his opinion was based on the combination of all Appellant's previous injuries, including a portion of the Enhanced PPD. *See* **Bennett v. Treasurer**, 607 S.W.3d 251, 257 (Mo. App. E.D. 2020) (holding that the appellant's medical experts wrongly included pre-existing conditions that did not qualify under Subsection 3). Moreover, Dr. Mullins did not assign a specific number of weeks to Appellant's left shoulder, instead referencing Dr. Koprivica's rating of Appellant's 1992 Left Shoulder Injury at 46.4

10

weeks PPD. Relying on this evidence, the Commission determined that Appellant's 1992 Left Shoulder Injury equaled only 46.4 weeks of PPD.

We also agree with the dissent in **Ryan** that nothing about the legislature's use of the word "equaling" in Subsection 3 requires either an extensive dictionary analysis or justifies the implementation of "an undefined mathematical equation" in order to add an enhanced PPD award to a primary injury award. **Ryan**, 2024 WL 4886488, at *12 (Torbitzky, J., dissenting). Under strict construction, we cannot give Subsection 3 "broader application [or meaning] than is warranted by its plain and unambiguous terms." **Sell v. Ozarks Med. Ctr.**, 333 S.W.3d 498, 507 (Mo. App. S.D. 2011) (quoting **Harness v. S. Copyroll Inc.**, 291 S.W.3d 299, 303 (Mo. App. S.D. 2009)). Here, the plain and unambiguous language of Subsection 3 is that a disability "equals" a minimum of fifty weeks of PPD compensation when, as relevant here, the *compensable injury* is worth fifty weeks of disability compensation. **Ryan**, 2024 WL 4886488, at *12 (Torbitzky, J., dissenting). [6] Under strict construction, we may not "add words to or subtract words from a statute or ignore the plain meaning of the words chosen by the legislature," **Naeter**, 576 S.W.3d at 237, and the plain language of Subsection 3 indicates that a claimant is entitled to PTD only when the primary injury combines with a distinct, qualifying

---

[6] While our finding that Appellant's 1992 Left Shoulder Injury fails to meet the fifty-week threshold to qualify for an award of PTD is dispositive of his claim, we also note our disagreement with the finding of the majority in **Ryan** that an award of enhanced PPD is a "direct result" of any individual previous disability. Enhanced PPD does not exist without a combination of injuries. There is no dispute that a single disability, standing alone, would not entitle a claimant to an award of enhanced PPD. Appellant argues that we should combine his prior injuries to create a value of added disability from the Enhanced PPD (which would not exist without such combination), and then strip out an individual disability and assign back to it a portion of that Enhanced PPD which, by definition, would not have existed without such combination. As noted by the dissent in **Ryan**, the existence of a particular disability is a necessary condition to obtaining enhanced PPD, but it is not sufficient on its own to support such an award. **Ryan**, 2024 WL 4886488, at *13 (Torbitzky, J., dissenting). "The disability addressed by enhanced PPD, therefore, is not something that can be assigned to any one body part." **Id.** In other words**,** once the cake is baked, you cannot turn it back into the eggs you made it with.

preexisting disability, not when the primary injury combines with a combination of distinct, non-qualifying preexisting disabilities.

Appellant's reading of Subsection 3 is at odds with the strict construction of the current statutory framework; is contrary to the holdings in *Parker*, *Klecka*, *Phelps*, and *Adams*; and undermines the specific purpose of the 2013 amendment to limit Fund liability. Strictly construing the conditions required to make a compensable PTD claim against the Fund, the Commission was correct in finding that Appellant has a medically-documented preexisting disability to his left shoulder that is a direct result of his 1992 Left Shoulder Injury. Standing alone, however, this preexisting disability is non-qualifying because it does not meet the fifty-week threshold required by Subsection 3.

## Conclusion

The Commission's decision is affirmed.

MATTHEW P. HAMNER, J. – OPINION AUTHOR

JENNIFER R. GROWCOCK, C.J. – CONCURS

JEFFREY W. BATES, J. – CONCURS

DON E. BURRELL, J. – CONCURS

MARY W. SHEFFIELD, J. – CONCURS

JACK A. L. GOODMAN, J. – CONCURS

BECKY J. WEST, J. – CONCURS